IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Andrew M. Gabriel, on behalf of himself and all others similarly situated,** | : : : | |
| **Plaintiff,** | : : | No. _____ |
| v. | : : : | Civil Division |
| **Giant Eagle, Inc., Marckisotto Markets Inc. (dba "Edgewood Giant Eagle" or "Giant Eagle" or "Giant Eagle Pharmacy #24"), Shakespeare Street Associates Gp LLC (dba "Shakespeare Giant Eagle" or "Giant Eagle" or "Giant Eagle Pharmacy #17"), and CVS Pharmacy, Inc. (dba "CVS" or "CVS Store #4091"),** | : : : : : : : : : | |
| **Defendants.** | : : : | |

## REMOVAL PETITION

**PLEASE TAKE NOTICE** that Defendant CVS Pharmacy, Inc. ("CVS"), by and through its attorneys, and pursuant to 28 U.S.C. §§ 1332 and 1453, hereby gives notice of removal of this action from the Allegheny Court of Common Pleas to the United States District Court for the Western District of Pennsylvania. As grounds for the removal, CVS states as follows:

### INTRODUCTION

1.  This case is removable under the Class Action Fairness Act of 2005, P.L. 109-2, as codified at 28 U.S.C. §§ 1332(d) and 1453 ("CAFA"). All of the requirements of CAFA are satisfied in this case. The putative class consists of at least 100 members, the citizenship of

12135675v1

plaintiff and other putative class members is different from that of at least one of the Defendants, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

## PROCEDURAL HISTORY

2. Plaintiff Andrew M. Gabriel, ("Plaintiff"), on behalf of himself and purportedly all others similarly situated, commenced a class action against Giant Eagle, Inc. ("Giant Eagle"), John Doe #1 and John Doe #2 ("Defendants") by filing first a writ of summons on April 22, 2014, in the Court of Common Pleas of Allegheny County, Pennsylvania. True and correct copies of the docket and writ are attached hereto as **Exhibits A and B**. On May 2, 2014, Plaintiff then filed a Class Action Complaint (the "Complaint") against these same defendants. A true and correct copy of the Complaint is attached hereto as **Exhibit C**.

3. On May 6, 2014, Plaintiff filed an Amended Complaint naming the same defendants as in the original Complaint – Giant Eagle, John Doe #1 and John Doe #2. On May 14, 2014, Plaintiff filed a Second Amended Complaint naming some of the same defendants as the original Complaint and Amended Complaint, Giant Eagle and John Doe #1, and adding Marckisotto Markets, Inc., and Shakespeare Street Associates, LLC. CVS was not named as a defendant. True and correct copies of the Amended Complaint and Second Amended Complaint are attached hereto as **Exhibits D and E**.

4. On May 20, 2014, a Praecipe for Writ to Join Additional Defendant was filed naming CVS. A true and correct copy of the Praecipe for Writ of Summons to Join Additional Defendant is attached hereto as **Exhibit F**. On May 29, 2014, CVS was purportedly served with the Praecipe for Writ of Summons to Join Additional Defendant. A true and correct copy of the Sheriff's Return is attached hereto as **Exhibit G**.

5. On June 20, 2014, Plaintiff commenced a civil action against CVS by filing a Third Amended Complaint ("TAC") naming Giant Eagle, Marckisotto Markets, Inc.,

2

Shakespeare Street Associates, LLC, and for the first time, CVS. A true and correct copy of the TAC is attached hereto as **Exhibit H**.

6. This Notice of Removal is filed within 30 days of the receipt by CVS, through service or otherwise, of a copy of Plaintiff's TAC. Defendant CVS first received notice of the claims at the earliest on or about June 20, 2014, when Plaintiff avers that he served CVS with the TAC.[1] Courts follow the rule that adding a new defendant "commences" a new action under CAFA. *See Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801 (5th Cir. 2006); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 749 (7th Cir. 2005).

7. Thus, the filing of the TAC adding CVS "commences" a new action against CVS, *Robinson v. Holiday Universal, Inc.*, Civ. A. No. 05-5726, 2006 U.S. Dist. LEXIS 7252, at *5 (E.D. Pa. Feb. 27, 2006) and removal is therefore timely. 28 U.S.C. § 1446(b); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999).

8. True and correct copies of the remaining docket entries are attached to this Notice as **Exhibit I**.[2]

9. In his 485-paragraph TAC, Plaintiff alleges, in essence, that CVS purportedly filled controlled substances prescriptions for customers throughout the United States without ascertaining whether such prescriptions were written for legitimate medical purposes as required by the federal and Pennsylvania Controlled Substances Acts. (TAC 42, 53). Further, Plaintiff alleges that CVS should have verified the relationship between the individuals presenting

---

[1] Plaintiff certifies that he served a copy of the TAC on CVS Pharmacy, Inc. 7406 Church Street, Pittsburgh, PA 15218, but does not certify the method of service or on whom service was made. To date, CVS has not located the service copy of the TAC.

[2] On June 18, 2014, the CVS store #4091 located at 7406 Church Street in Pittsburgh, Pennsylvania was served with a Motion Seeking Determination As To Necessity of Certificate of Merit. But for the foregoing, no other process, order or other pleading in this action has been received to date by Defendant CVS. *Id.*

prescriptions and the patient and that CVS's filling of a purportedly fraudulently presented prescription constitutes identity theft and violation of privacy rights. (TAC ¶¶ 42-46, 53, 57-60, 63, 64, 120-122).

10. Plaintiff's specific claims against CVS are negligent security of personal information (TAC ¶¶ 228-292), negligent failure to act (TAC ¶¶ 342-385), identity theft (TAC ¶¶ 392-395), unjust enrichment (TAC ¶¶ 425-441), invasion of privacy (TAC ¶¶ 462-470), and conversion (TAC ¶¶ 481-485). Plaintiff also asserts the above claims in his TAC against Giant Eagle and claims for fraud and alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

## BASIS FOR REMOVAL UNDER CAFA

11. This Court has original diversity jurisdiction over this action pursuant to the provisions of CAFA because: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from at least one of the Defendants; and (3) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

**A.   The Proposed Class Consists of At Least 100 Putative Members.**

12. Plaintiff requests that two subclasses be certified. (TAC ¶ 135). Specifically, Plaintiff requests that the subclasses be defined as follows:

> a. All individuals whose identity and/or protected health information was used by Defendants during the period beginning at least as early as April 28, 2012 to present where:
>
> i. said individual's identity and/or protected health information was used by Defendants to fill a purported prescription for a federally controlled substance; and
>
> ii. the controlled substance that was the subject of the purported prescription was known by Defendants to be commonly abused by drug addicts ("Class 1").

      b.    All individuals whose identity and/or protected health information was used in an unauthorized way by Defendants during the period beginning at least as early as April 28, 2012 to present where:

          i.    said individual's identity and/or protected health information was used by Defendants to fill a purported prescription for a federally controlled substance; and

          ii.    the controlled substance that was the subject of the purported prescription was known by Defendants to be commonly abused by drug addicts ("Class 2").

(TAC ¶ 135).

13.    According to the Complaint, "there are at *least hundreds to thousands* of present and former individuals in the Classes." (TAC ¶ 136) (emphasis added). Consequently, the number of putative class members is far in excess of 100.[3]

**B.    There Is Minimal Diversity of Citizenship.**

14.    Upon information and belief and as alleged in the TAC, Plaintiff Andrew M. Gabriel was, at the commencement of this action and at the time of removal, and is now, a resident and domiciliary of the Commonwealth of Pennsylvania, residing in Allegheny County, Pennsylvania. (TAC ¶ 124). Upon information and belief, Plaintiff Andrew M. Gabriel is thus a citizen of Pennsylvania.

15.    Defendant CVS was at the commencement of this action and at the time of removal, and is now, a corporation incorporated under the laws of the State of Rhode Island, with its principal place of business at 1 CVS Drive, Woonsocket, Rhode Island 02895, and is thus a citizen of the State of Rhode Island.

---

[3] Defendant does not concede that the alleged subclasses exist or that the alleged subclasses can or should be certified. Instead, Defendant simply states that the subclasses as conceived and alleged by Plaintiff himself clearly exceed 100 members.

16.	Pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by P.L. 109-2, because there is a diversity of citizenship between at least one proposed class member and at least one Defendant, the diversity of citizenship requirement is satisfied.

### C.	The Aggregate Amount in Controversy Exceeds $5,000,000.

17.	The amount in controversy is calculated by taking the aggregate of all compensatory damages, punitive damages, and attorneys' fees sought by Plaintiff.  *Frederico v. Home Depot*, 507 F.3d 188, 198-99 (3d Cir. 2007).  Plaintiff does not specifically aver in the Complaint that the amount in controversy is less than the $5,000,000 jurisdictional minimum.  *See Frederico,* 507 F.3d at 195; *Lorah v. Suntrust Mortgage, Inc.*, No. 08-703, 2009 U.S. Dist. LEXIS 12318 (E.D. Pa. Feb. 19, 2009).  Once the removing party has met the amount in controversy standard, "challengers to federal subject matter jurisdiction, must prove to a legal certainty, that the amount in controversy could not exceed the statutory threshold." *Lorah*, 2009 U.S. Dist. LEXIS 12318 at *14 (citing *Frederico*, 507 F.3d at 195).

18.	The Congressional intent in passing CAFA was to "expand substantially federal court jurisdiction over class actions" and some courts have held that the "value of the matter in litigation" may be determined "either from the viewpoint of the plaintiff or the viewpoint of the defendant, . . . regardless of the type of relief sought." *Yeroushalmi v. Blockbuster Inc.*, CA No. 05-2550, 2005 U.S. Dist. LEXIS 39331, *10-11 (C.D. Cal. July 5, 2005) (quoting Senate Judiciary Committee report at S. Rep. 109-14 at *42-44).  CAFA's provisions should be read broadly, with a strong preference that interstate class actions be heard in a federal court if properly removed by any defendant.  *Id*. at 43.  Accordingly, Congress directed that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising

jurisdiction over the case." *Id.*; *see also, e.g., Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 843 (S.D. Iowa 2013) (quoting same); *Chavis v. Fid. Warranty Servs.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006) (same); *Dinkel v. GMC*, 400 F. Supp. 2d 289, 295 (D. Me. 2005).

1. **Alleged Damages Pursuant to Plaintiff's Claims For Negligence, Identity Theft, Unjust Enrichment, Invasion of Privacy, and Conversion Exceed $5,000,000.**

19. Plaintiff seeks relief against both Giant Eagle and CVS in Counts I, II, III, V, VII and VIII of the TAC for negligence, identify theft, unjust enrichment, invasion of privacy, and conversion.

20. In Plaintiff's twelve-paragraph Prayer for Relief, he seeks 1) compensatory damages, 2) statutory damages, 3) restitution, 4) punitive damages, 5) all legal fees, 6) trebling of damages, and 7) "[f]or all such other relief as this Court may deem proper." (TAC, Prayer for Relief, pages 80-81). In addition, Plaintiff's TAC requests equitable and injunctive relief, including 1) an accounting of all profits gained by Defendants due to the activity complained of, 2) equitable disgorgement of those profits, 3) injunctive relief precluding Defendants from dispensing drugs without first taking steps to confirm the prescription is valid, and 4) injunctive relief precluding Defendants from using health information without first taking steps to confirm the information is authorized. *Id.*[4]

---

[4] The costs associated with meeting the requirements of the injunctive relief sought can also be taken into account in determining the amount in controversy. *Abdale v. N. Shore-Long Island Jewish Health Sys.*, No. 13-1238, 2014 U.S. Dist. LEXIS 88881 (E.D.N.Y. June 30, 2014) (finding that the amount-in-controversy requirement is met where plaintiff's claims for actual damages to cover losses, out-of-pocket expenses, "the burden and expense of comprehensive credit monitoring for more than one year into the future," and for equitable relief in the form of a fund to pay for credit and identity theft monitoring, in light of the size of the purported class (which was alleged to be in the thousands) and the expansive nature of Plaintiffs' claimed damages).

21. Aggregating the relief sought in such counts, along with the UTPCPL claim, quickly demonstrates that the amount in controversy for the claims as alleged and conceived by Plaintiff well exceeds the $5,000,000 minimum. *See Frederico*, 507 F.3d at 198-99 (amount in controversy calculated by taking aggregate of all compensatory damages, punitive damages, and attorneys' fees sought by Plaintiff).

22. In that regard, and among other things, Plaintiff seeks to disgorge from CVS all profits realized from the sale of controlled substances from April 2012 to the present. (TAC, prayer for relief, ¶ 4, ¶ 135 (defining classes)). Plaintiff contends that two classes of individuals are potentially affected by his allegations. The first class (Class 1) is comprised of all individuals whose protected health information was purportedly used between April 28, 2012 and the present to fill a controlled substance prescription known by Defendants to be commonly abused. (TAC. ¶ 135(a)).

23. The Drug Enforcement Administration (DEA) divides controlled substances into schedules tied to the potential for abuse of the drug, with Schedule I being the most likely to be abused and Schedule V the least likely to be abused. *See* Controlled Substances Schedules, Office of Diversion Control, http://www.deadiversion.usdoj.gov/schedules/index.html (last visited July 18, 2014). Importantly, though, the DEA has stated that all the controlled substances have potential for abuse, even though they may fall on a continuum from most likely to be abused to least likely to be abused. Moreover, all dispensed prescriptions necessarily involve the use of "protected health information." *See* http;//www.hhs.gov/ocr/privacy/hipaa/understanding/summary (last visited July 18, 2014) (providing that "[t]he Privacy Rule protects all *'individually identifiable health information'* held

or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral").

24.     CVS is one of the largest retail pharmacy chains in the United States with approximately 7,600 stores nationwide.  *See* CVS Caremark Corporation 2013 Annual Report at 13.  In 2013 alone, CVS's 7,600 stores filled approximately 890,100,000 -- almost one billion -- prescriptions and had gross profits of $13,977,840,000 (69.5% pharmacy portion of total retail gross profits of $20,112,000,000).  *Id.* at 33.

25.     In 2010, controlled substance prescriptions represented approximately 10% to 11% of the total number prescriptions filled annually.  *See* Electronic Prescriptions for Controlled Substances, 75 Fed. Reg. 16236, 16237 (March 31, 2010) (to be codified at 21 C.F.R. pt. 1300, 1304, 1306 and 1311).  Multiplying CVS's total of 890,100,000 prescriptions dispensed in 2013, by just the low 10% end of this range yields approximately 89,010,000 controlled substances prescriptions being filled in 2013 alone.  The profits realized from the sale of nearly 90,000,000 prescriptions during one year alone, let alone during the two year-plus class period of April 2012 to the present (all of which Plaintiff seeks to disgorge), plainly is in excess of $5 million dollars.

26.     In light of the sheer size of Class 1, the second class (Class 2) – individuals whose protected health information was allegedly used "in an unauthorized way" in connection with Defendants' filling of controlled substance prescriptions (TAC ¶ 136) -- is not even necessary for the Court's determination of the amount in controversy.  Nevertheless, taking together Plaintiff's reliance on the alleged harm to putative Class 1 and Class 2 customers, it is plain that Plaintiff's claims for negligence, unjust enrichment, identity theft, invasion of privacy and conversion alone

over a two-year period regarding Classes 1 and 2 far exceeds the $5,000,000 jurisdictional minimum.

### 2. Damages Pursuant to the UTPCPL Claim Against Giant Eagle.

27. In addition to the millions of dollars Plaintiff seeks in its common law claims, the amount in controversy also includes statutory penalties, and attorney's fees, that further satisfy § 1332(d)'s amount-in-controversy requirement. In Count VI of the Third Amended Complaint, Plaintiff Gabriel seeks recovery from Giant Eagle for violations of the UTPCPL, consisting of damages for "loss of money or property as a result of the use or employment of, by Defendant Giant Eagle, the unfair and/or deceptive practice," loss of money or property due to submission of fraudulent claims, and "loss of money or property by having to purchase an insurance policy including a prescription drug benefit at an inflated price" pursuant to "73 P.S. § 201-9.2(a)." (TAC Count I).

28. Section 201-9.2(a) of the UTPCPL allows for recovery of actual damages or one hundred dollars, whichever is greater. Moreover, the Court may award up to three times the actual damages sustained, but not less than one hundred dollars, and may provide such additional relief as it deems necessary or proper. The Court may award to the Plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees. 73 P.S. § 201-9.2(a).

29. Plaintiff's UTPCPL claim is broad in scope, alleging purported consumer subclasses that include all individuals who had controlled substances prescriptions filled by Giant Eagle (Class 1) or were subjected to the unauthorized use of protected health information in connection with the filling of a controlled substance prescription (Class 2). (TAC ¶ 135). As noted previously, the TAC alleges that "there are at least hundreds to thousands of present and former individuals in the Classes." (*Id*. ¶ 136).

30. Assuming that the $100 minimum UTPCPL statutory damages were to be assessed, just 50,001 prescriptions by Giant Eagle that fall into Class 1 or 2 over the entirety of the two-plus year period would give rise to an amount in controversy in excess of $5,000,000. Notably, Plaintiff's inclusion of all controlled substances prescriptions by Giant Eagle in Class 1, which together with Plaintiff's allegation that there are "at least hundreds to thousands of present and former individuals in the Classes," supports the proposition that there are at least 50,001 prescriptions allegedly susceptible to $100 statutory damages under the UTPCPL.

31. Additionally, as noted above and as demanded by Plaintiff in his Prayer for Relief, in addition to the $100 fine per violation, fees and costs, the Court can also order treble damages for each violation. Accordingly, the minimum $5,000,000 amount in controversy can be reached by 16,667 prescriptions that allegedly violate the UTPCPL, should treble damages be applied.

32. Accordingly, Plaintiff's claims for alleged negligence, unjust enrichment, invasion of privacy, identity theft, and conversion against both CVS and Giant Eagle, combined with the fraud and statutory violation claims under the UTPCPL against Giant Eagle easily exceed the $5,000,000 amount in controversy requirement.

33. Moreover, because the Plaintiff seeks attorneys' fees, the Court must consider attorneys' fees when calculating the amount in controversy. For purposes of determining whether the CAFA $5,000,000 jurisdictional minimum has been satisfied, courts have estimated that the amount of attorneys' fees may be as much as thirty percent of any potential judgment. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (noting study done by the Federal Judicial Center found that attorneys' fees equaled a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period).

### 3.     Plaintiff Does Not Dispute That the Amount in Controversy Exceeds $5,000,000.

34.     Finally, had Plaintiff sought to limit his potential damages under the statutory minimum of $5,000,000, he could have filed an affidavit to that effect and thus avoided removal. *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006) (noting that "CAFA does not change the proposition that the plaintiff is the master of her own claim" and noting that plaintiffs may limit their claims to avoid subject matter jurisdiction); *see also Lorah*, 2009 U.S. Dist. LEXIS 12318 at *10-11. Plaintiff did not do so.

35.     In addition, none of the exceptions to jurisdiction under CAFA, set forth in 28 U.S.C. §§ 1332(d)(3)-(4), apply here. Acceptance of jurisdiction is therefore mandatory.

36.     Accordingly, the requisite amount in controversy for federal jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), as amended by P.L. 109-2, is satisfied.[5]

37.     Pursuant to 28 U.S.C. §1446(d), CVS is on this date filing a Notice of Removal with the Prothonotary of the Court of Common Pleas of Allegheny County and serving a copy of the same on plaintiff. A copy of the Notice is attached hereto as **Exhibit J**.

### CONCLUSION

The above-mentioned state court action is a class action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d), and which therefore may be removed to this Court pursuant to 28 U.S.C. §§ 1446 and 1453, in that (a) the number of members of all proposed plaintiff classes in the aggregate is not less than 100; (b) the action is a class action in which at least one member of the class of plaintiffs is a citizen of a State different from at least

---

[5] Defendants do not agree or concede that Plaintiff or any proposed class member will be entitled to such relief or any other relief sought in the Complaint. However, Plaintiff's complaint fixes the right of the Defendants to remove. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

one defendant, and (c) is a civil action in which the matter in controversy exceeds in the aggregate the sum or value of $5,000,000, exclusive of interest and costs.

                Respectfully submitted,

                **POST & SCHELL, P.C.**

                /s/Sarah C. Yerger
                Sarah C. Yerger, Esquire
                PA I.D. No. 70357
                17 North Second Street, 12th Floor
                Harrisburg, PA  17101
                Telephone:  (717) 731-1970
                Facsimile:  (717) 731-1985
Dated:  July 21, 2014          Email: syerger@postschell.com

## CERTIFICATE OF SERVICE

I, Sarah C. Yerger, Esquire, an attorney at the law firm of Post & Schell, P.C., do hereby certify that on the date set forth below, I did cause to be served a true and correct copy of the foregoing document upon the following individual(s) via U.S. Mail, First Class, postage prepaid, as follows:

| | |
|---|---|
| Brian Samuel Malkin, Esquire<br>Andrew M. Gabriel, Esquire<br>Ference & Associates, LLC<br>409 Broad Street – Suite 260<br>Pittsburgh, PA  15143<br>*Attorneys for Plaintiff* | Bernard D. Marcus, Esquire<br>Stephen S. Zubrow, Esquire<br>James S. Larrimer, Esquire<br>Marcus & Shapira, LLP<br>One Oxford Centre, 35th Floor<br>301 Grant Street<br>Pittsburgh, PA  15219<br>*Attorneys for Giant Eagle, Inc.* |
| Marckisotto Markets Inc.<br>1705 S. Braddock Avenue<br>Pittsburgh, PA  15218 | Shakespeare Street Associates GP, LLC<br>6320 Shakespeare Street<br>Pittsburgh, PA  15206 |

Dated:  July 21, 2014                           /s/Sarah C. Yerger_____
                                                                Sarah C. Yerger