IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

CIVIL DIVISION

Andrew M. Gabriel, on behalf of himself and
all others similarly situated,

                 Plaintiff,

       vs.

Giant Eagle, Inc., John Doe #1 and John Doe
#2.

                Defendants.

NO. GD-14-007257

CLASS ACTION COMPLAINT

Code:

Filed on behalf of Plaintiff:
Andrew M. Gabriel

Counsel of record for this party:

Brian Samuel Malkin, Esquire.
Pa. I.D. #70448
Andrew M. Gabriel, Esquire
Pa. I.D. #208079

bmalkin@ferencelaw.com
courts@ferencelaw.com
Ference & Associates LLC
409 Broad Street – Ste 260
Pittsburgh, PA 15143
(412) 741-8400

JURY TRIAL DEMANDED

Andrew Mark Gabriel ("Plaintiff"), by his undersigned attorneys, for his Class

Action Complaint against defendants Giant Eagle, Inc. ("Giant Eagle"), John Doe #1 and

John Doe #2 – collectively "Defendants", alleges, upon information and belief, as

follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this Action against Defendants for being aware of, but consciously disregarding and being indifferent to, schemes in which individuals fraudulently purchase controlled substances, including Schedule II controlled substances, hereinafter "drugs", from Defendants via unauthorized use of identities and personally identifiable health information, including Plaintiff's identity and personally identifiable health information.

2.      In so doing, Defendants violate applicable legal duties owed to Plaintiff, at least with respect to the securing and handling of private medical information as reflected in The Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy, Security and Breach Notification Rules found in 45 C.F.R. § 164.306(a) et seq., including common law fiduciary duties and duties of reasonable care.

3.      Defendants were well aware at all times material to this Action, and it was reasonably foreseeable to Defendants, that individuals attempt to use fraudulent prescriptions as a means to obtain drugs for non-medical uses ("drug diversion").

4.      According to information accessible from the Pennsylvania State Board of Pharmacy web site over 6 million Americans use prescription drugs such as pain relievers, tranquilizers, and stimulants *non-medically*.

5.      According to information accessible on the Center for Disease Control and Prevention ("CDC") web site drug overdose death rates in the United States have more than tripled since 1990 and have never been higher.

6.    In 2008, more than 36,000 people died from drug overdoses, and most of these deaths were caused by prescription drugs.

7.    According to CDC research, drug overdoses kill more Americans than car accidents, with almost half of drug poisonings being tied to prescription painkillers.

8.    According to Jefferson Regional Medical Center's web site Western Pennsylvania stands above the national average in people addicted to prescription drugs. The well-understood prescription drug abuse problem, which according to the U.S. Attorney for the Western District of Pennsylvania is at epidemic levels, was the topic of discussion at the Western Pennsylvania Prescription Drug Abuse Summit sponsored by the U.S. Attorney's Office for the Western District of Pennsylvania in June, 2012.

9.    Pennsylvania law requires the reporting of Schedule II controlled substances transactions under the Prescription Monitoring Program administered by the Pennsylvania Attorney General.

10.    This reporting is required, *inter alia*, because of the well established prescription fraud epidemic in the Commonwealth of Pennsylvania, and in part because, as stated by the Pennsylvania Attorney General's Office, it is well known that drug addicts will forge prescriptions to get Oxycontin.

11.    It is generally understood that pharmacists act as a "gatekeeper", uniquely positioned to stop fraud at the point of drug sale and distribution.

12.    According to the National Institute on Drug Abuse, pharmacists play a key role in recognizing prescription falsifications and alterations.

13.     This gatekeeper function is recognized in the Commonwealth of Pennsylvania.

14.     According to the Pennsylvania State Board of Pharmacy, to be valid, a prescription for a controlled substance must be issued for a legitimate medical purpose by a practitioner acting in the usual course of sound professional practice.

15.     According to the Pennsylvania State Board of Pharmacy, the practitioner is responsible for the proper prescribing and dispensing of controlled substances.

16.     However, a corresponding responsibility rests with the pharmacist who dispenses the prescription.

17.     An order for controlled substances that purports to be a valid prescription, but is not issued in the usual course of professional treatment, or for legitimate and authorized research, is not a valid prescription.

18.     The Pennsylvania Board of Pharmacy's reference to a "corresponding responsibility" in the pharmacist for dispensing prescriptions only for "a legitimate medical purpose" corresponds with the mandate by the U.S. Drug Enforcement Agency's ("DEA") Pharmacist's Manual, which states in part:

> **Corresponding Responsibility**
> *A pharmacist also needs to know there is a corresponding responsibility for the pharmacist who fills the prescription.* An order purporting to be a prescription issued *not in the usual course of professional treatment* or in legitimate and authorized research *is an invalid prescription* within the meaning and intent of the [Controlled Substances Act] CSA (21 U.S.C. § 829) ... *A pharmacist is required to exercise sound professional judgment when making a determination about the legitimacy of a controlled substance prescription. Such a determination is made before the prescription is dispensed.* The law does not require a pharmacist to dispense a prescription of doubtful, questionable, or suspicious origin. *To the contrary, the pharmacist who deliberately ignores a questionable*

- 4 -

*prescription when there is reason to believe it was not issued for a legitimate medical purpose may be prosecuted along with the issuing practitioner, for knowingly and intentionally distributing controlled substances.* Such action is a felony offense, which may result in the loss of one's business or professional license (see United States v. Kershman, 555 F.2d 198 [United States Court Of Appeals, Eighth Circuit, 1977]).

Pharmacist's Manual, DEA (2010) (emphasis added).

19.     The "corresponding responsibility" referenced by the Pennsylvania State Board of Pharmacy and the DEA corresponds with the requirements of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, that states in part that a practitioner may prescribe, administer, or dispense a controlled substance or other drug or device *only* (i) in good faith in the course of his professional practice, *(ii) within the scope of the patient relationship, and (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.*

20.     Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act states that a "practitioner" includes a pharmacist.

21.     Pennsylvania common law also recognizes that pharmacists and pharmacies have a legal duty to exercise due care and diligence in the performance of professional duties.

22.     Law enforcement in the Commonwealth of Pennsylvania has made prescription pain medication trafficking one of its highest priorities.

23.     Key facilitators of this illegal trafficking are profit driven businesses, including Defendants in this Action, which by engaging in profit focused behavior enable fraud schemes to be conducted.

24.     Profit seeking enterprises such as Defendants have made a conscious decision to omit simple safety mechanisms so that they may preserve or increase profit margins from an important source of revenue – prescription drug sales – thus facilitating drug diversion.

25.     Defendants' activities knowingly risk creation of a class of identity theft victims, including Plaintiff.

26.     Defendant was well aware at all times material to this Action of simple, cost-effective mechanisms known to be standard practice by which fraudulent prescriptions may be identified and separated from valid prescriptions, including mechanisms recommended by the DEA and implemented in various states.

27.     The DEA has even published guidelines for pharmacists and pharmacies so that they know what their "corresponding" responsibilities are.  These guidelines are found at: <u>A Pharmacist's Guide to Prescription Fraud</u>, DEA Publication, Vol. 1, Issue 1, February 2000, available at: http://www.deadiversion.usdoj.gov/pubs/brochures/ pharmguide.htm (hereinafter "DEA guidelines").

28.     The DEA guidelines for pharmacists specifically state that as healthcare professionals, pharmacists share responsibility for solving the prescription drug abuse and diversion problem.  Pharmacists must become aware of the potential situations where drug diversion can occur and safeguards that can be enacted to prevent this diversion.

29.     Under the "Types of Fraudulent Prescriptions" section, the DEA guidelines warn one of the criteria that may indicate that a purported prescription was not

issued for a legitimate medical purpose is that the "Patient appears presenting prescriptions written *in the names of other people*." Id. (emphasis supplied).

30.    Under the section entitled "Prevention Techniques", the DEA guidelines suggest that the pharmacist "know the patient" and that "when there is a question concerning **any** aspect of the prescription order, call the prescriber for verification or clarification." Id. (emphasis in original).

31.    The DEA guidelines also go on to suggest, not surprisingly, that "[a]ny time you are in doubt, you should request proper identification. Although this procedure isn't foolproof (identification papers can also be stolen or forged), it does increase the drug abuser's risk. **If you believe that you have a forged, altered, or counterfeited prescription -- don't dispense it -- call your local police.** Id. (emphasis in original).

32.    Notably, the DEA guidelines do not suggest a *post-hoc* approach whereby drugs are dispensed to any and all individuals with a purported prescription, even in someone else's name, leaving it to others to deal with the fallout of the clearly illegal activity.

33.    Accordingly, since the year 2000, clear, specific, cost-effective, common sense and national standards and techniques for preventing the specific type of fraud that is the subject of this Action were available to Defendants.

34.    Defendants have failed to adhere to these standards and have thus participated in the creation of a class of identity theft victims.

35.    At all times material to this Action Defendants were equally well aware that medical identity theft is a critical risk to their patients.

36.     According to a survey conducted by the Identity Theft Resource Center, medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013.

37.     Federal laws such as the Health Insurance Portability and Accountability Act (HIPAA) (1996) and the Health Information Technology Act (HITECH) (2009) require medical information to be kept confidential.

38.     Consciously disregarding know medical identity theft techniques and thus permitting a criminal to freely use another's health insurance to purchase narcotics illegally violates duties of care required by common law that reflect these statutory standards regarding the confidentiality of patients' health and medical information.

**ALLEGATIONS**

39.     Plaintiff incorporates by reference each and every preceding paragraph.

40.     Defendants, as a matter of routine, filled prescriptions using Plaintiff's identity for another individual without validating or confirming that the prescriptions were for a legitimate medical purpose.

41.     In doing so, Defendants, as a matter of routine, provided an unauthorized individual with Plaintiff's private medical information without authorization.

42.     Defendants also, as a matter of routine, submitted insurance claims on Plaintiff's behalf that they know or should have known were fraudulent.

43.     Specifically, Defendants were presented with prescriptions by an individual not named in the prescription, or as the DEA puts it a "[patient appeared] presenting prescriptions written in the names of other people." DEA guidelines, *supra*.

44.     Defendants did not recognize or did not care to recognize that these prescriptions were facially suspect or deficient due to the mismatch in the identity of the person named in the prescription, i.e., Plaintiff, and the identity of the individual attempting to have the prescription filled.

45.     Defendants nonetheless filled these prescriptions and facilitated theft of Plaintiff's identity.

46.     Defendants also help themselves to use of Plaintiff's health insurance benefits by charging, without authorization, Plaintiff's insurance policy for reimbursement on these fraudulent claims.

47.     Defendants permitted use of Plaintiff's confidential medical and health information as part of this process.

48.     Defendants had or have an existing customer and/or patient relationship(s) with Plaintiff.

49.     Defendants owed Plaintiff a duty of care at least because of the existing relationship(s) and/or the nature of Defendants' businesses.

50.     Defendants never notified their patient and/or customer, i.e., Plaintiff, of any potential problems with these fraudulent prescriptions prior to filling them, including use of Plaintiff's health insurance policy benefits and/or confidential medical and health information.

51.     Defendants did not attempt to confirm that these fraudulent prescriptions were for a legitimate medical purpose prior to filling them.

52.     Defendants did not attempt to validate that Plaintiff's confidential medical and health information was being used for an authorized purpose.

53.     Defendants did not attempt to validate that the insurance claims submitted on these transactions were for a legitimate or authorized purpose prior to submission of the fraudulent claims.

54.     Defendants failed in any attempt to act as a "gatekeeper" –specifically with reference to drug diversion and medical insurance fraud—a problem the existence of which Defendants were aware at all times material to this Action.

55.     Defendants failed to adhere to the applicable standard of care in confirming these fraudulent prescriptions were for a legitimate medical purpose prior to filling them.

56.     Defendants enabled an individual's fraudulent acts in such schemes by, *inter alia*, actions and/or omissions such as providing an individual with drugs using fraudulent prescriptions, including forged prescriptions that were invalid on their face, using Plaintiff's identity and others similarly situated.

57.     Defendants enabled an individual's fraudulent acts in such schemes by, *inter alia*, actions and/or omissions such as providing an individual with drugs repeatedly based on purported prescriptions that were noticeably not presented for a legitimate medical purpose due to the nature and/or timing of their presentation.

58.     Defendants' were aware of prescription drug fraud schemes and medical identity theft schemes and consciously disregarded these risks by failing to act in a reasonable manner with respect to preventing the same.

59.     On or about May 14, 2012, Plaintiff first became aware of that fraudulent transactions related to forged prescriptions had been conducted between Defendants and an individual.

60.     Plaintiff first became aware of these fraudulent transactions when he was contacted by a detective from the Pittsburgh Police to alert Plaintiff that Plaintiff was the victim of identity theft.

61.     Plaintiff was contacted at his place of business by said detective.

62.     Plaintiff's co-worker was made aware of the police contact – causing great embarrassment for Plaintiff.

63.     Plaintiff was shocked and outraged that Defendants had used his identity to sell drugs to said individual in such a manner.

64.     Plaintiff was shocked and outraged that Defendants had used his identity to submit fraudulent insurance claims on Plaintiff's behalf in such a manner.

65.     Plaintiff was never, and to date— has never been, contacted by Defendants to inquire as to the legitimacy of these fraudulent transactions or to provide any notification that Plaintiff's confidential medical information was used for illegitimate and unauthorized purposes.

66.     Plaintiff was never, and to date—has never been, contacted by Defendants to notify him that his confidential patient information was used fraudulently in illegal narcotics sales.

67.     Plaintiff was never, and to date—has never been, contacted by Defendants to notify him that his confidential patient information was used fraudulently in illegal insurance claim submissions.

68.     Had the police not contacted Plaintiff to warn him, these activities would have continued.

69.     At least one Defendant did contact Plaintiff –after May 14, 2012—, by telephone to ask if Plaintiff would like one of the fraudulent prescriptions re-filled.

70.     Plaintiff was shocked and outraged that said at least one Defendant had, given the circumstances, attempted to sell him drugs.

- 12 -

71.     Plaintiff notified said at least one Defendant of the fraudulent prescription issue.

72.     Said at least one Defendant placed Plaintiff on hold, checked their records, and then acknowledged that said at least one Defendant had already been contacted by the police, had records seized and was in fact fully aware of this issue.

73.     Said at least one Defendant then apologized to Plaintiff.

74.     At no time did Defendants attempt to verify that the purported prescriptions were issued validly from a health care provider prior to filling them.

75.     At no time did Defendants attempt to verify the identity of the individual presenting the purported prescriptions to ascertain if the name of the individual presenting the prescriptions matched the person named in the prescriptions prior to filling them.

76.     At no time did Defendants attempt to verify the identity of the individual presenting the purported prescriptions to determine if said individual was authorized to collect the prescriptions prior to filling them.

77.     At no time did Defendants attempt to work within in the scope of the patient relationship by determining any patient at all was to actually receive the medication that was the subject of the purposed prescription(s).

78.     At no time did Defendants recognize that repeatedly presented fraudulent prescriptions, that used Plaintiff's identity and others similarly situated, were used to obtain the same or similar medication(s) within a short time period—outside of any possible legitimate medical purpose.

- 13 -

79.     At not time did Defendants attempt to validate insurance claims made on these fraudulent prescriptions.

80.     Defendants profit by selling drugs in a streamlined fashion that consciously omits necessary safety precautions for preventing drug diversion and insurance fraud and exhibits a calculated indifference to schemes involving unauthorized uses of Plaintiff's identity and confidential medical information, including insurance benefit information.

81.     Defendants consciously choose to act and/or failed to act in a way that streamlines and facilitates such drug sales, including to individuals with facially defective, fraudulent prescriptions.

82.     Defendants have made a business decision to omit necessary step(s) in verifying that purported prescriptions are in fact valid prescriptions prior to filling them.

83.     Defendants have failed to implement to any reasonable business decision(s) and/or policy that would verify that purported prescriptions are in fact valid prescriptions prior to filling them.

84.     Defendants have chosen to implement unacceptably low business decision(s) and/or policies with regard to verifying that purported prescriptions are in fact valid prescriptions prior to filling them.

85.     Defendants have failed to adhere to any applicable business decision(s) that they have made and attempted to implement which seek verify that purported prescriptions are in fact valid prescriptions prior to filling them.

86.     Defendants have likewise failed in ensuring that Plaintiff's identity and confidential medical information is not used for unauthorized purposes such as fraudulent insurance claim submissions.

87.     Individuals such as Plaintiff and others similarly situated are left damaged by Defendants' behavior.

88.     Plaintiff is left to deal with the fall out of Defendants' behavior with respect to filling fraudulent prescriptions, unauthorized use of confidential medical information, and submission of fraudulent insurance claims.

89.     Plaintiff's damages include time lost and money lost dealing with this medical identity theft, including incorporation of incorrect information into Plaintiff's private electronic or other health record(s).

90.     Having his identity stolen at Defendants' places of business proximately caused Plaintiff's damages.

91.     Having his confidential medical information used in an unauthorized way by Defendants proximately caused Plaintiff's damages.

92.     Having fraudulent insurance claims submitted by Defendants on Plaintiff's behalf proximately caused Plaintiff's damages.

93.     Having fraudulent insurance claims submitted by Defendants on Plaintiff's behalf indirectly damages Plaintiff.

94.     Had Defendants complied with applicable legal duties, e.g., to verify the purported prescriptions were for a legitimate medical purpose (especially given the suspect nature of the purported prescriptions), to know the patient—with whom

Defendants had an established relationship, to work within the scope of the patient relationship, and to protect confidential medical information, these fraudulent transactions would never have taken place and Plaintiff's identity would not have been stolen.

95.     No party, except Defendants, was/were in a position to prevent the identity theft suffered by Plaintiff.

96.     Defendants are in a position of trust due to the nature of the business they have chosen.

97.     Defendants repeatedly failed to conduct themselves as trusted professionals in favor of profit seeking behavior by consciously ignoring or being indifferent to these well know medical identity theft risks.

98.     All of Plaintiff's damages and injuries were reasonably foreseeable to and caused by Defendants.

**JURISDICTION AND VENUE**

99.     Plaintiff incorporates by reference each and every preceding paragraph.

100.     Venue is proper in this county under Rule 2179 of the Pennsylvania Rules of Civil Procedure.  Defendants each transact business throughout the Commonwealth of Pennsylvania in general and within Allegheny County specifically.  Many of the acts and omissions, as well as the course of conduct charged herein, occurred in Allegheny County.

101.     Defendants are within the Jurisdiction of this Court.  Defendants each operate numerous retail stores within the Commonwealth of Pennsylvania and within Allegheny County.  Thus, Defendants have obtained the benefits of the laws of the Commonwealth of Pennsylvania and the Pennsylvania retail and consumer markets.

102.     Plaintiff's claims arise from Defendants' systematic practice of dispensing drugs to any and all persons having a purported prescription in this Commonwealth, including prescriptions that are facially invalid, without bothering to take necessary step(s) to ascertain or inquire as to the legitimacy of the purported prescription – to the detriment of those, including Plaintiff and others similarly situated, having their identities stolen.

103.     Plaintiff's claims also arise from Defendants' systematic practice of using confidential medical information in unauthorized ways, e.g., to submit fraudulent insurance claims on Plaintiff's behalf.

## THE PARTIES

104.    Plaintiff incorporates by reference each and every preceding paragraph.

105.    Plaintiff, Andrew Mark Gabriel, at all times material to this action, resided in Allegheny County, in the Commonwealth of Pennsylvania.

106.    Defendant Giant Eagle is a Pennsylvania corporation with its headquarters in Pittsburgh Pennsylvania, and does business in the form of retail pharmacies situated in grocery stores in Allegheny County in the Commonwealth of Pennsylvania.

107.    John Doe #1 and John Doe #2 are corporations and/or individuals that likewise have committed acts and/or omissions that are the subject matter of this Action.

## CLASS ACTION ALLEGATIONS

108.    Plaintiff incorporates by reference each and every preceding paragraph.

109.    Plaintiff is an individual who, within the applicable limitations period prior to commencement of this Action, was the victim of identity theft.

110.    The identity theft was facilitated and made possible by the failure of Defendants to verify that purported prescriptions were for a legitimate medical purpose.

111.    Specifically, the ready acceptance by the Defendants of fraudulent prescriptions from an individual seeking to purchase drugs from Defendants using one of Defendants' own patient's and/or customer's identity enabled the identity theft.

112.    This ready acceptance of fraudulent prescriptions was routinely followed by Defendants' unauthorized use of confidential medical information of Plaintiff and unauthorized submission of fraudulent insurance claims on Plaintiff's behalf.

113.    Plaintiff and others similarly situated were damaged as a direct or indirect result of Defendants' acts and/or omissions.

114.    Plaintiff brings this action as a class action pursuant to Pennsylvania Rules of Civil Procedure 1701, *et seq.*, on behalf of a Class consisting of:

> a.   All current and former victims of identity theft in the Commonwealth of Pennsylvania during the period beginning at least as early as April 28, 2012 to present where:
>
> > i.   the identity theft was enabled or facilitated by the aforementioned failure of Defendants to verify that purported

prescriptions for Schedule II controlled substances were for a legitimate medical purpose; and

ii.   the purported prescription named an existing patient and/or customer of Defendants but was in fact collected by another individual without the named patient's consent or authorization ("the Class").

115.   Plaintiff believes that there are at least hundreds to thousands of present and former identity theft victims in the Class.  Given the size and scope of Defendants' businesses within the Commonwealth of Pennsylvania, and the rampant nature of prescription drug diversion using purported prescriptions in the Commonwealth of Pennsylvania, the members of the Class are so numerous that joinder of all members is impractical.

116.   Plaintiff's claims are typical of the claims of the Class members because Plaintiff was an identity theft victim who, like all Class members, was a patient and/or customer of Defendants that sustained damages arising out of Defendants' failure to verify purported prescriptions for drugs filled for a third party using Plaintiff's identity.

117.   Plaintiff will fairly and adequately protect the interests of the Class members and be represented by counsel competent and experienced in complex, class action litigation.

118.   Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members.  Among the questions of law and fact common to Plaintiff and Class are:

a.  Whether Defendants are under an obligation to take steps to verify a purported prescription for Schedule II controlled substances, naming a patient and/or customer of Defendants, and prior to dispensing the drugs, was for a legitimate medical purpose, and what those steps are when a third party attempts to fill a purported prescription naming a patient and/or customer of Defendants;

b.  What steps Defendants take to verify that a purported prescription for Schedule II controlled substances is for a legitimate medical purpose prior to dispensing the drugs when a third party attempts to fill a purported prescription naming a patient and/or customer of Defendants;

c.  Whether Defendants, as part of verifying that the purported prescription is for a legitimate medical purpose, are under an obligation to take steps to verify the identity of an individual seeking Schedule II controlled substances, prior to dispensing the drugs, when a third party attempts to fill a purported prescription naming a patient and/or customer of Defendants;

d.  What steps Defendants take to verify that the identity of an individual seeking Schedule II controlled substances prior to dispensing the drugs when a third party attempts to fill a purported prescription naming a patient and/or customer of Defendants;

e.  Whether Defendants are under an obligation to take steps to verify that an individual, even if properly identified, is authorized to utilize the

- 21 -

identity of Defendants' patient and/or customer to fill a purported

prescription for Schedule II controlled substances prior to dispensing

the drugs;

f.   What steps Defendants take to verify that an individual, even if

properly identified, is authorized to utilize the identity of Defendants'

patient and/or customer to fill a purported prescription for Schedule II

controlled substances prior to dispensing the drugs; and

g.   The nature and extent of class-wide injury and the measure of damages

for the injury.

119.   Class action treatment is superior to the alternatives for the fair

adjudication of the controversy alleged herein.  Such treatment will permit a large

number of similarly situated identity theft victims to prosecute their common claims in a

single forum simultaneously, efficiently, and without the duplication of effort and

expense that numerous individual actions would entail.  No difficulties are likely to be

encountered in the management of this class action that would preclude its maintenance

as a class action, and no superior alternative exists for the fair and efficient adjudication

of this controversy.

120.   The Class is readily identifiable from Defendants' own records.

121.   Prosecution of separate actions by individual members of the Class would

create the risk of inconsistent and varying adjudications with respect to individual

members of the Class that would establish incompatible standards of conduct for

Defendants.

122.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical.

123.   Furthermore, the amounts at stake for many of the class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

124.   Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to the Plaintiff, the Class, and the Commonwealth of Pennsylvania.

125.   Plaintiff envisions no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

## NEGLIGENT SECURITY OF PERSONAL INFORMATION

### Defendant Giant Eagle

126.    Plaintiff incorporates by reference each and every preceding paragraph.

127.    Defendant Giant Eagle is engaged in the selling of prescription drugs, including Schedule II controlled substances, in the Commonwealth of Pennsylvania primarily through pharmacies in supermarkets.

128.    Defendant Giant Eagle is in possession of Plaintiff's and others similarly situated—hereinafter simply "Plaintiff", identity and health insurance information.

129.    Defendant Giant Eagle has a legal duty to reasonably safeguard Plaintiff's identity and health insurance information from being used for an illegitimate purpose.

130.    Defendant Giant Eagle failed to take reasonable precautions to protect Plaintiff from foreseeable injuries caused by a third party.

131.    While no organization can completely prevent illegal activities of third parties, Defendant Giant Eagle can certainly decrease the likelihood, as in this case, by not providing such easy access to Plaintiff's identity and health insurance information.

132.    Defendant Giant Eagle has sacrificed the well being of its existing patients and customers in favor of profits by dispensing drugs to individuals that do not have a valid prescription and use Plaintiff's identity.

133. Defendant Giant Eagle has sacrificed the well being of its existing patients and customers in favor of profits by submitting fraudulent insurance claims using Plaintiff's identity and health insurance information.

134. In so doing, Defendant Giant Eagle does not attempt to verify that purported prescriptions for drugs are for a legitimate medical purpose, e.g., by inquiring with the prescribing physician or verifying the identity of the individual attempting to fill the purported prescription.

135. Defendant Giant Eagle does not succeed in any efforts that may have been implemented to verify that purported prescriptions for drugs are for a legitimate medical purpose.

136. By and through such conscious disregard of the known risk of identity theft and in the face of obvious fraud, i.e., in the form of a facially deficient purported prescription made out to another person but filled by an individual not named and having no authority to act on the named person's behalf, Defendant Giant Eagle also damages its existing patients and customers that have their identities stolen as part of this process.

137. The victims of identity theft created by Defendant Giant Eagle's profit-driven behavior, including Plaintiff, suffer lost time in dealing with the fall out of identity theft, including time lost contacting health care providers, time lost contacting health insurance providers, time lost coordinating with ongoing law enforcement investigations, money lost due to fraudulent insurance claims made and/or other claims made using the Plaintiff's identity, as well as suffering emotional distress attendant to such victimization.

138.    The drug diversion facilitated by Defendant Giant Eagle's profit-driven behavior inflicts sever damage on the Commonwealth of Pennsylvania in the form of lost revenue paid on invalid prescription benefit claims, expenditure of law enforcement resources, and increased health insurance costs.

139.    Beginning at a date unknown to Plaintiff, but on or about April 28, 2012, Defendant Giant Eagle engaged in dispensing of drugs to an individual that used Plaintiff's identity as a means to secure the drugs.

140.    Defendant Giant Eagle's behavior included but is not limited to filling one or more purported prescriptions for controlled substances, specifically including but not limited to Schedule II controlled substance pain medications, under the guise of a purported prescription made out to Plaintiff, an existing customer and patient of Defendant Giant Eagle.

141.    This purported prescription or prescriptions for drugs was/were provided by an individual, not Plaintiff, to Defendant Giant Eagle, without Plaintiff's authorization.

142.    Defendant Giant Eagle did not:

    a.  identify the individual presenting the purported prescription(s);

    b.  confirm that the purported prescription(s) was/were validly issued from a health care provider;

    c.  confirm that the purported prescription(s) was/were for a legitimate medical purpose;

d.  confirm that the name on the prescription(s), i.e., Plaintiff's name—
one of Defendant Giant Eagle's existing customers and patients,
matched the identity of the individual presenting the purported
prescription(s); and/or

e.  confirm that such individual, other than Plaintiff named on the
purported prescription(s), was authorized by Plaintiff to fill/receive the
prescription(s).

143.   Defendant Giant Eagle filled two purported prescriptions for an individual
using Plaintiff's identity without Plaintiff's permission or authorization on or about April
28, 2012 for 60 tablets of 10 mg Hydrocodone-acetaminophen, a Schedule II narcotic
pain killer, and a purported prescription for the controlled substance Cyclobenzaprine-
HCl.

144.   Each of these purported prescriptions filled on or about April 28, 2012 by
Defendant Giant Eagle was fraudulent.

145.   Each of these purported prescriptions filled on or about April 28, 2012 by
Defendant Giant Eagle was purported to be valid and was presented by an individual
other than Plaintiff, and named Plaintiff as the patient –just as warned of by the DEA
guidelines.

146.   Defendant Giant Eagle filled each of these purported prescriptions on or
about April 28, 2012 without any apparent question or concern and using Plaintiff's
confidential medical information without authorization.

147.    This practice of dispensing Schedule II narcotics to third parties without validating that the purported prescriptions are legitimate is a standard practice of Defendant Giant Eagle.

148.    Defendant Giant Eagle filled each of these purported prescriptions on or about April 28, 2012 without any contact or inquiry to the physician named on the purported prescription.

149.    Defendant Giant Eagle filled each of these purported prescriptions on or about April 28, 2012 without any contact or inquiry to Plaintiff about their legitimacy.

150.    Defendant Giant Eagle used and disclosed Plaintiff's confidential medical information without authorization on or about April 28, 2012.

151.    Defendant Giant Eagle submitted false insurance claims using Plaintiff's identity and health insurance information on the basis of each of these purported prescriptions without Plaintiff's authorization on or about April 28, 2012.

152.    A mere four days later, Defendant Giant Eagle again filled a purported prescription for an individual using Plaintiff's identity and without Plaintiff's permission.

153.    Specifically, on or about May 2, 2012, Defendant Giant Eagle filled a purported prescription for Oxycodone.

154.    Defendant Giant Eagle again failed to verify that the purported prescription filled on or about May 2, 2012 was for a legitimate medical purpose.

155.    Specifically, Defendant Giant Eagle failed to recognize that the amounts listed in the purported prescriptions of about April 28, 2012 and about May 2, 2012, and the timing thereof, both filled by Defendant Giant Eagle, clearly indicated that, over and

above the mismatched identities of the individual presenting the purported prescription and Plaintiff, the purported prescriptions could not be for a legitimate medical purpose or at least required further inquiry.

156.    Defendant Giant Eagle used and disclosed Plaintiff's confidential medical information without authorization on or about May 2, 2012.

157.    Defendant Giant Eagle submitted false insurance claims using Plaintiff's identity and health insurance information on the basis this purported prescription without Plaintiff's authorization on or about May 2, 2012.

158.    Ten days thereafter, i.e., on or about May 12, 2012 Defendant Giant Eagle again filled another purported prescription for an individual using Plaintiff's identity without Plaintiff's permission or authorization.

159.    Defendant Giant Eagle again failed to verify that the purported prescription filled on or about May 12, 2012 was for a legitimate medical purpose.

160.    Specifically, Defendant Giant Eagle filled a purported prescription *for 75 more tablets of Oxycodone (15mg)* for the individual using Plaintiff's identity on or about May 12, 2012.

161.    Defendant Giant Eagle again failed to recognize, over and above the mismatched identities of the individual presenting the purported prescription and Plaintiff, that the amounts listed in the purported prescriptions and the timing thereof, both filled by Defendant Giant Eagle at the same pharmacy location, i.e., *60 tablets of 15 mg Oxycodone and 75 tablets of 15 mg Oxycodone within 10 days*, clearly indicated that

the purported prescriptions were not for a legitimate medical purpose or at least required further inquiry.

162.    Defendant Giant Eagle used and disclosed Plaintiff's confidential medical information without authorization on or about May 12, 2012.

163.    Defendant Giant Eagle submitted false insurance claims using Plaintiff's identity and health insurance information on the basis this purported prescription without Plaintiff's authorization on or about May 12, 2012.

164.    Defendant Giant Eagle's behavior in this regard is shocking and outrageous.

165.    Plaintiff was not contacted by Defendant Giant Eagle regarding any of the fraudulent prescriptions or unauthorized use of Plaintiff's confidential medical information, even after police investigators notified Defendant Giant Eagle that Plaintiff had been victimized in an identity theft scheme.

166.    Defendant Giant Eagle, at all times material to this Action, was aware that identity thieves routinely attempt to pass off fraudulent purported prescriptions in order to obtain drugs, including Schedule II narcotics.

167.    Defendant Giant Eagle, at all times material to this Action, was aware that identity thieves routinely attempt to use confidential healthcare information of others, including health insurance benefits.

168.    Defendant Giant Eagle controls and is liable for any and all employees or individual(s) whose individual or collective action(s) or inaction(s) are the subject of this Action.

169.    Defendant Giant Eagle is aware that not all prescriptions are valid, i.e., they are merely purported prescriptions.

170.    Defendant Giant Eagle is uniquely responsible for ensuring, under a corresponding responsibility of pharmacists, that purported prescriptions made out in Plaintiff's name are only filled for a legitimate medical purpose.

171.    Defendant Giant Eagle is uniquely responsible for ensuring that Plaintiff's confidential healthcare information is not used for illegitimate purposes.

172.    Defendant Giant Eagle specifically owed a duty to Plaintiff as an existing patient and/or customer of Defendant Giant Eagle.

173.    Defendant Giant Eagle's duty owed to Plaintiff includes verifying that a purported prescription, naming Plaintiff, one of Defendant's existing patients and/or customers, is presented for a legitimate medical purpose.

174.    Defendant Giant Eagle's duty owed to Plaintiff includes ensuring that Plaintiff's confidential healthcare information is not used for illegitimate purposes.

175.    Defendant Giant Eagle's duty owed to Plaintiff includes taking steps to, when faced with a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, but presented by another person for filling at the point of sale, identify said another person attempting to fill the prescription *prior to filling the prescription*.

176.    Defendant Giant Eagle's duty owed to Plaintiff includes taking steps to ensure, when faced with a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, but

presented by another person for filling at the point of sale, *that said another person is authorized to fill the prescription by Plaintiff prior to filling the prescription.*

177.   Defendant Giant Eagle's duty owed to Plaintiff includes taking steps to ensure, when faced with a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, but presented by another person for filling at the point of sale, *that said another person is authorized to fill the prescription by Plaintiff prior to filling the prescription and making an insurance claim on Plaintiff's behalf.*

178.   Defendant Giant Eagle breached a duty owed to Plaintiff by not taking step(s) necessary to identify the individual presenting a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle.

179.   Defendant Giant Eagle breached a duty owed to Plaintiff by not adequately performing step(s) necessary to identify the individual presenting a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle.

180.   Defendant Giant Eagle breached a duty owed to Plaintiff by not taking step(s) necessary to determine if an individual presenting a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, was authorized by Plaintiff to do so.

181.   Defendant Giant Eagle breached a duty owed to Plaintiff by not adequately performing step(s) necessary to determine if an individual presenting a

purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, was authorized by Plaintiff to do so.

182.    Although Plaintiff never requested that a prescription or prescriptions for Schedule II controlled substances be filled by Defendant Giant Eagle during the time period relevant to this Action, Defendant Giant Eagle nonetheless filled a purported prescription or prescriptions using Plaintiff's identity.

183.    Defendant Giant Eagle failed to take steps necessary to verify that the purported prescription or prescriptions were valid and presented for a legitimate medical purpose and were presented by Plaintiff or an authorized agent of Plaintiff.

184.    Defendant Giant Eagle submitted false insurance claims on behalf of Plaintiff for said fraudulent purported prescription(s) without Plaintiff's consent.

185.    Defendant Giant Eagle disclosed and used Plaintiff's confidential medical information without authorization.

186.    Defendant Giant Eagle wholly abandoned the role of "gatekeeper" and did not make reasonable attempts to safeguard Plaintiff from an individual attempting to use Plaintiff's identity prior to filling purported prescriptions for Schedule II controlled substances.

187.    Defendant Giant Eagle wholly abandoned Plaintiff as a patient and/or customer by not making reasonable attempts to notify Plaintiff that his identity had been used in an identity theft scheme.

- 33 -

188.     Defendant Giant Eagle consciously disregarded known risks, including prescriptions presented by third parties using Plaintiff's medical identity for Schedule II narcotics, as a standard practice.

189.     By deciding to engage in the business of selling Schedule II controlled substances in the Commonwealth of Pennsylvania, Defendant Giant Eagle's duty of care includes verifying that a purported prescription or prescriptions presented using Plaintiff's identity for such Schedule II controlled substances is valid, has been presented by Plaintiff or an authorized agent of Plaintiff, and is for a legitimate medical purpose.

190.     Defendant Giant Eagle breached a duty of care by filling a purported prescription or prescriptions for Schedule II controlled substances without attempting to verify that the prescription or prescriptions was/were valid, was/were presented by Plaintiff or an authorized agent of Plaintiff, or was/were for a legitimate medical purpose.

191.     Defendant Giant Eagle's acts and/or omissions, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because they permitted Plaintiff's identity to be stolen.

192.     Defendant Giant Eagle's acts and/or omissions, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because they caused Plaintiff's identity to be used to submit false or fraudulent insurance claim(s).

193.     Defendant Giant Eagle's acts and/or omissions, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because they caused Plaintiff's identity to be the included in criminal investigations relating to prescription drug fraud.

194.    Plaintiff was harmed by Defendant Giant Eagle's acts and/or omissions because Plaintiff spent time communicating with co-workers, police investigators, health insurance providers, and others as a direct result of Defendants' acts and/or omissions.

195.    Plaintiff was harmed by Defendant Giant Eagle's acts and/or omissions because Plaintiff was subjected to emotional distress as a direct result of Defendants' acts and/or omissions.

196.    Plaintiff was harmed by Defendant Giant Eagle's acts and/or omissions because Plaintiff's health insurance benefits were used without Plaintiff's permission.

197.    Accordingly, Plaintiff is entitled to judgment in his favor.

## SECOND CAUSE OF ACTION

## NEGLIGENT FAILURE TO ACT

### Defendant Giant Eagle

198.    Plaintiff incorporates by reference each and every preceding paragraph.

199.    Defendant Giant Eagle has a legal duty to take affirmative steps to reasonably safeguard Plaintiff's medical identity due to the nature of Defendant Giant Eagle's business.

200.    Defendant Giant Eagle failed to take reasonable precautions to protect Plaintiff from foreseeable injuries caused by a third party.

201.    By and through such inaction, in conscious disregard of obvious fraud, i.e., in the form of a facially deficient purported prescription made out to another person but filled by an individual not named and having no authority to act on the named person's behalf, Defendant Giant Eagle damages its existing patients and customers that have their identities stolen as part of this process, including Plaintiff.

202.    The victims of identity theft created by Defendant Giant Eagle's profit-driven behavior, including Plaintiff, suffer lost time in dealing with the fall out of identity theft, including time lost contacting health care providers, time lost contacting health insurance providers, time lost coordinating with ongoing law enforcement investigations, money lost due to fraudulent insurance claims made and/or other claims made using the Plaintiff's identity, as well as suffering emotional distress attendant to such victimization.

203.    The drug diversion facilitated by Defendant Giant Eagle's profit-driven behavior inflicts sever damage on the Commonwealth of Pennsylvania in the form of lost

revenue paid on invalid prescription benefit claims, expenditure of law enforcement resources, and increased health insurance costs.

204.   Defendant Giant Eagle's behavior included but is not limited to filling one or more purported prescriptions for controlled substances without verifying the same were for legitimate medical purposes.

205.   This purported prescription or prescriptions for drugs was/were provided by an individual, not Plaintiff, to Defendant Giant Eagle, without Plaintiff's authorization.

206.   Defendant Giant Eagle did not:

    a.  identify the individual presenting the purported prescription(s);

    b.  confirm that the purported prescription(s) was/were validly issued from a health care provider;

    c.  confirm that the purported prescription(s) was/were for a legitimate medical purpose;

    d.  confirm that the name on the prescription(s), i.e., Plaintiff's name— one of Defendant Giant Eagle's existing customers and patients, matched the identity of the individual presenting the purported prescription(s); and/or

    e.  confirm that such individual, other than Plaintiff named on the purported prescription(s), was authorized by Plaintiff to fill/receive the prescription(s).

207.    Defendant Giant Eagle submitted false insurance claims using Plaintiff's identity and health insurance information on the basis of each of these purported prescriptions without Plaintiff's authorization.

208.    Plaintiff was not contacted by Defendant Giant Eagle regarding any of the fraudulent prescriptions or false insurance claim submissions, even after police investigators notified Defendant Giant Eagle that Plaintiff had been victimized in an identity theft scheme.

209.    Defendant Giant Eagle, at all times material to this Action, was aware that identity thieves routinely attempt to pass off fraudulent purported prescriptions in order to obtain drugs, including Schedule II narcotics.

210.    Defendant Giant Eagle, at all times material to this Action, was aware that identity thieves routinely attempt to use personal and/or healthcare information of others, including insurance benefits.

211.    Defendant Giant Eagle controls and is liable for any and all employees or individual(s) whose individual or collective action(s) or inaction(s) are the subject of this Action.

212.    Defendant Giant Eagle is aware that not all prescriptions are valid, i.e., they are merely purported prescriptions.

213.    Defendant Giant Eagle is uniquely responsible for ensuring, under a corresponding responsibility of pharmacists, that purported prescriptions made out in Plaintiff's name are only filled for a legitimate medical purpose.

214.    Defendant Giant Eagle is uniquely responsible for ensuring that Plaintiff's patient and healthcare information is not used for illegitimate purposes.

215.    Defendant Giant Eagle specifically owed a duty to Plaintiff as an existing patient and/or customer of Defendant Giant Eagle.

216.    Defendant Giant Eagle's duty owed to Plaintiff includes verifying that a purported prescription, naming Plaintiff, one of Defendant's existing patients and/or customers, is presented for a legitimate medical purpose.

217.    Defendant Giant Eagle's duty owed to Plaintiff includes ensuring that Plaintiff's patient and healthcare information is not used for illegitimate purposes.

218.    Defendant Giant Eagle breached a duty owed to Plaintiff by not adequately performing step(s) necessary to identify the individual presenting a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle.

219.    Defendant Giant Eagle breached a duty owed to Plaintiff by not adequately performing step(s) necessary to determine if an individual presenting a purported prescription for Schedule II controlled substances and naming Plaintiff, an existing patient and/or customer of Defendant Giant Eagle, was authorized by Plaintiff to do so.

220.    Although Plaintiff never requested that a prescription or prescriptions for Schedule II controlled substances be filled by Defendant Giant Eagle during the time period relevant to this Action, Defendant Giant Eagle nonetheless filled a purported prescription or prescriptions using Plaintiff's identity.

221. Defendant Giant Eagle failed to take steps necessary to verify that the purported prescription or prescriptions were valid and presented for a legitimate medical purpose and were presented by Plaintiff or an authorized agent of Plaintiff.

222. Defendant Giant Eagle submitted false insurance claims on behalf of Plaintiff for said fraudulent purported prescription(s) without Plaintiff's consent.

223. Defendant Giant Eagle wholly abandoned the role of "gatekeeper" and did not make reasonable attempts to safeguard Plaintiff from an individual attempting to use Plaintiff's identity prior to filling purported prescriptions for Schedule II controlled substances.

224. Defendant Giant Eagle wholly abandoned Plaintiff as a patient and/or customer by not making reasonable attempts to notify Plaintiff that his identity was attempted to be used or had been used in an identity theft scheme.

225. Defendant Giant Eagle's failure to act, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because it permitted Plaintiff's identity to be stolen.

226. Defendant Giant Eagle's failure to act, in breach of a duty of care owed to Plaintiff, caused Plaintiff's confidential medical information to be used in an unauthorized fashion.

227. Defendant Giant Eagle's failure to act, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because they caused Plaintiff's identity to be used to submit false or fraudulent insurance claim(s).

228.    Defendant Giant Eagle's failure to act, in breach of a duty of care owed to Plaintiff, caused Plaintiff harm because it caused Plaintiff's identity to be the included in criminal investigations relating to prescription drug fraud.

229.    Plaintiff was harmed by Defendant Giant Eagle's failure to act because Plaintiff spent time communicating with co-workers, police investigators, health insurance providers, and others as a direct result of Defendants' failure to act.

230.    Plaintiff was harmed by Defendant Giant Eagle's failure to act because Plaintiff was subjected to emotional distress as a direct result of Defendants' failure to act.

231.    Plaintiff was harmed by Defendant Giant Eagle's failure to act because Plaintiff's health insurance benefits were used without Plaintiff's permission.

232.    Accordingly, Plaintiff is entitled to judgment in his favor.

## THIRD CAUSE OF ACTION

## IDENTITY THEFT

### Defendant Giant Eagle

233.    Plaintiff incorporates by reference each and every preceding paragraph.

234.    Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff to further an unlawful purpose—insurance fraud.

235.    Specifically Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff to submit fraudulent insurance claims in reckless disregard of the validity of the insurance claims.

236.    Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff to further an unlawful purpose—unlawful prescription drug sales.

237.    Specifically Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff while deliberately ignoring a questionable prescription when there was reason to believe it was not issued for a legitimate medical purpose.

238.    Accordingly, Plaintiff is entitled to judgment in his favor under 42 Pa.C.S. § 8315.

### FOURTH CAUSE OF ACTION

### FRAUD

### Defendant Giant Eagle

239.    Plaintiff incorporates by reference each and every preceding paragraph.

240.    Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff to further an unlawful purpose—insurance fraud.

241.    Specifically Defendant Giant Eagle possessed and used identifying information of Plaintiff without the consent of Plaintiff to submit, in conscious disregard of their validity, fraudulent insurance claims arising from purported prescriptions that were not presented for a legitimate medical purpose.

242.    Defendant Giant Eagle misrepresented to an insurance carrier that the insurance claims Defendant Giant Eagle submitted were for and related to legitimate prescriptions in reckless disregard to whether these prescriptions were legitimate.

243.    The receiving insurance carrier justifiably relied on Defendant Giant Eagle's misrepresentations in handling the insurance claims.

244.    Defendant Giant Eagle caused damage to Plaintiff by submission of fraudulent insurance claims to the insurance carrier.

245.    Defendant Giant Eagle caused damage to Plaintiff by unauthorized use of Plaintiff's insurance policy in connection with fraudulent insurance claims.

246.   Defendant Giant Eagle's course of conduct in routinely submitting fraudulent insurance claims to insurance carriers, in reckless disregard of their legitimacy, additional damages Plaintiff by causing insurance premiums to rise for all in this Commonwealth paying for such insurance policies.

247.   Accordingly, Plaintiff is entitled to judgment in his favor.

## FIFTTH CAUSE OF ACTION

## UNJUST ENRICHMENT

## Defendant Giant Eagle

248.    Plaintiff incorporates by reference each and every preceding paragraph.

249.    Defendant Giant Eagle submitted insurance claims to Plaintiff's insurance carrier to collect Plaintiff's insurance benefits without Plaintiff's knowledge, consent, authorization, or agreement.

250.    Defendant Giant Eagle accepted payments from Plaintiff's insurance and thereby appreciated the benefits of the submitted insurance claims.

251.    Defendant Giant Eagle was unjustly enriched by the insurance payments that it received without Plaintiff's knowledge, consent, authorization or agreement.

252.    It would be inequitable to allow Defendant Giant Eagle to retain the insurance payments it received from Plaintiff's insurance carrier.

253.    Defendant Giant Eagle collected money on prescription drug sales at the point of sale using Plaintiff's medical identity without Plaintiff's knowledge, consent, authorization, or agreement.

254.    Defendant Giant Eagle accepted payments on a sale purported authorized only by the use of Plaintiff's medical identity and thereby appreciated the benefits of the fraudulent sales.

255.   Defendant Giant Eagle was unjustly enriched by the point of sale payments that it received without Plaintiff's knowledge, consent, authorization or agreement.

256.   It would be inequitable to allow Defendant Giant Eagle to retain the point of sale payments it received using Plaintiff's medical identity.

257.   Accordingly, judgment should be entered in Plaintiff's favor in the amount of the payments collected without Plaintiff's knowledge, consent, authorization, or agreement.

## SIXTH CAUSE OF ACTION

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND

## CONSUMER PROTECTION LAW

### Defendant Giant Eagle

258.   Plaintiff incorporates by reference each and every preceding paragraph.

259.   Defendant Giant Eagle submits insurance claims to insurance carriers for benefit payments relating to prescription drug sales that it knew or should have known were fraudulent.

260.   Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, causes a likelihood of confusion on the part of the insurance carriers or a misunderstanding as to the source, sponsorship, approval or certification, particularly by Plaintiff, of the services it has offered and seeks payment for.

261.   Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, causes a likelihood of confusion or of misunderstanding as to the affiliation, association with, or certification by another, particularly Plaintiff, of the services it has offered and seeks payment for.

262.   Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, knowingly misrepresents that services are needed when they are not needed.

263.     Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, engages in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding with respect to the legitimacy of the fraudulent insurance claims.

264.     Plaintiff has purchased during a relevant time period to this Action at least one insurance prescription drug benefit primarily for personal, family or household purposes.

265.     Plaintiff suffered a loss of money or property as a result of the use or employment of, by Defendant Giant Eagle, the unfair and/or deceptive practice(s) noted above.

266.     Specifically, Plaintiff suffered a loss of money or property by having his insurance policy prescription drug benefit used without his permission due to Defendant Giant Eagle's submission of fraudulent insurance claims to the insurance carrier providing Plaintiff's policy.

267.     Plaintiff also suffered a loss of money or property by having to purchase an insurance policy including a prescription drug benefit at an inflated price due to Defendant Giant Eagle's routine practice of submitting fraudulent insurance claims to the insurance carrier providing Plaintiff's policy.

268.     Accordingly, Plaintiff is entitled to judgment in his favor according to 73 P.S. § 201 – 9.2 (a).

## SEVENTH CAUSE OF ACTION

## INVASION OF PRIVACY

### Defendant Giant Eagle

269.    Plaintiff incorporates by reference each and every preceding paragraph.

270.    Defendant Giant Eagle intentionally intruded upon the solitude or seclusion of Plaintiff by accessing and using Plaintiff's medical identity without Plaintiff's permission or authorization. Defendant Giant Eagle's actions in this regard, including using Plaintiff's identity to distributed Schedule II narcotics to an unauthorized individual and/or using Plaintiff's identity to submit fraudulent insurance claims is highly offensive to a reasonable person.

271.    Defendant Giant Eagle intentionally appropriated to its own use or benefit Plaintiff's name. Defendant Giant Eagle's actions in this regard, including using Plaintiff's identity to distribute Schedule II narcotics to an unauthorized individual and/or using Plaintiff's identity to submit fraudulent insurance claims is highly offensive to a reasonable person.

272.    Defendant Giant Eagle's actions in this regard caused Plaintiff harm because it permitted Plaintiff's identity to be stolen.

273.    Defendant Giant Eagle's actions in this regard caused Plaintiff's confidential medical information to be used in an unauthorized fashion.

274.    Defendant Giant Eagle's actions in this regard caused Plaintiff harm because they caused Plaintiff's identity to be used to submit false or fraudulent insurance claim(s).

- 49 -

275.    Defendant Giant Eagle's actions in this regard caused Plaintiff harm because it caused Plaintiff's identity to be included in criminal investigations relating to prescription drug fraud.

276.    Plaintiff was harmed by Defendant Giant Eagle's actions in this regard because Plaintiff was forced to spend time communicating about Plaintiff's private medical details with co-workers, police investigators, health insurance providers, and others as a direct result of Defendants' actions.

277.    Plaintiff was harmed by Defendant Giant Eagle's actions in this regard because Plaintiff was subjected to emotional distress caused by having to discuss Plaintiff's private medical details as a direct result of Defendants' actions.

278.    Plaintiff was harmed by Defendant Giant Eagle's actions in this regard because Plaintiff's health insurance benefits were used without Plaintiff's permission.

279.    Accordingly, Plaintiff is entitled to judgment in his favor.

## EIGHTH CAUSE OF ACTION

## CONVERSION

### Defendant Giant Eagle

280.   Plaintiff incorporates by reference each and every preceding paragraph.

281.   Defendant Giant Eagle submitted insurance claims to insurance carriers for benefit payments relating to prescription drug sales that it knew or should have known were fraudulent.

282.   Defendant Giant Eagle, in submission of such fraudulent insurance claims to the insurance carriers, used Plaintiff's medical identity without consent.

283.   Defendant Giant Eagle, in submission of such fraudulent insurance claims to the insurance carriers, used Plaintiff's insurance benefits without consent.

284.   Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, using Plaintiff's identity and insurance benefits without Plaintiff's consent, exercised unauthorized control over Plaintiff's money and property.

285.   Defendant Giant Eagle, via submission of such fraudulent insurance claims to the insurance carriers, using Plaintiff's identity and insurance benefits without Plaintiff's consent, deprived Plaintiff of use and possession of Plaintiff's money and property.

286.   Accordingly, Plaintiff is entitled to judgment in his favor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendants, as follows:

1.  For compensatory damages according to proof at trial;

2.  For statutory damages according to proof at trial;

3.  For special damages according to proof at trial;

4.  For an accounting of all profits gained by Defendants due to the activity complained of in this Action;

5.  For a disgorgement of Defendants' said profits as equity deems proper;

6.  For punitive damages according to proof at trial;

7.  For an awarding of pre-judgment interest at the highest level rate, from and after the date of the service of the initial complaint in this Action for all damages;

8.  For an injunction enjoining and precluding Defendants from dispensing drugs within the Commonwealth of Pennsylvania, specifically Schedule II controlled substances, without first taking steps deemed necessary by this Court to confirm the purported prescription is for a legitimate medical purpose and validly presented;

9.  For an injunction enjoining and precluding Defendants from using confidential medical information of patients without first taking steps deemed

necessary by this court to ensure the use of confidential medical information is authorized under applicable standards.

10. For all legal fees incurred in bringing this action; and

11. For all such other relief as this Court may deem proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

By: _____

Brian Samuel Malkin, Esquire

Andrew M. Gabriel, Esquire

Attorneys for Plaintiff

- 53 -

## **VERIFICATION**

I, Andrew M. Gabriel, verify that I am the Plaintiff in the foregoing Action and that the information set forth in the foregoing Complaint is true and correct to the best of my knowledge, information and belief.

I understand that I am subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities for any false statement that I made in the foregoing Complaint.

Date: May 2, 2014

_____

Andrew M. Gabriel

- 54 -