## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW M. GABRIEL** | ) | |
| *on behalf of himself and all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-0980 |
| | ) | |
| **GIANT EAGLE, INC.,** | ) | Chief United States District Judge |
| **MARCKISOTTO MARKETS INC.** | ) | Joy Flowers Conti |
| *doing business as* | ) | |
| "EDGEWOOD GIANT EAGLE" or | ) | United States Magistrate Judge |
| *doing business as* | ) | Cynthia Reed Eddy |
| "GIANT EAGLE" or | ) | |
| *doing business as* | ) | |
| "GIANT EAGLE PHARMACY #24", | ) | |
| **SHAKESPEARE STREET ASSOCIATES** | ) | |
| **GP LLC,** *doing business as* | ) | |
| "GIANT EAGLE" or | ) | |
| *doing business as* | ) | |
| "SHAKESPEARE GIANT EAGLE" or | ) | |
| *doing business as* | ) | |
| "GIANT EAGLE PHARMACY #17" and | ) | |
| **CVS PHARMACY, INC.,** | ) | |
| *doing business as* "CVS" or | ) | |
| *doing business as* | ) | |
| "CVS STORE #4091" | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.       RECOMMENDATION

 For the reasons set forth below, it is respectfully recommended that the motion to dismiss

filed on behalf of Defendant CVS Pharmacy, Inc. ("CVS") [ECF No. 30] be granted in full. It is

further recommended that the motion to dismiss filed on behalf of Defendant Giant Eagle, Inc. ("Giant Eagle") [ECF No. 34] be granted in full.

## II.    REPORT

### A.  Background

This action was initially brought in the Court of Common Pleas of Allegheny County on April 22, 2014, and was removed to this Court on July 21, 2014 under the Class Action Fairness Act of 2005, P.L. 109-2 as codified at 28 U.S.C. §§ 1332(d), 1453 ("CAFA"). The case was referred to this United States Magistrate Judge for pretrial proceedings in accordance  with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1) and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges. The Third Amended Complaint ("TAC") was filed on June 20, 2014 [ECF No. 1-9].  The Court denied Plaintiff's Motion to Remand on December 12, 2014 [ECF Nos. 27, 28].

This action involves a dispute over the use of Plaintiff's identity by an unnamed Perpetrator to create fraudulent prescriptions in order to obtain controlled substances at Defendants' pharmacies located throughout the Pittsburgh area. Plaintiff brings this action on behalf of himself and other individuals whose identity and/or protected health information was used in a similarly fraudulent and unauthorized manner.  [TAC at ¶¶ 8, 135].  Defendants have moved to dismiss the TAC, arguing as to certain claims that the Plaintiff does not have standing and therefore, the Court lacks subject-matter jurisdiction over those certain claims, or alternatively, that Plaintiff has failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Allegations of the Complaint

Plaintiff is a resident of Allegheny County, Pennsylvania. [TAC at ¶124]. Defendant Giant Eagle is a Pennsylvania corporation that operates retail pharmacies in its grocery stores in Allegheny County. [TAC at ¶125]. Defendant CVS is a corporation incorporated under the laws of the state of Rhode Island and operates retail pharmacies in Allegheny County, Pennsylvania. [TAC at ¶ 127]. Plaintiff is an existing customer of CVS as well Giant Eagle pharmacy. [TAC at ¶56].

Plaintiff alleges that an unidentified Perpetrator obtained from Defendants Plaintiff's private medical information without his authorization. [TAC ¶ 49]. The Perpetrator then allegedly used Plaintiff's identity to create fraudulent prescriptions in order to obtain oxycodone and other controlled substances from Defendants' pharmacies. [TAC at ¶¶ 1, 48].

Specifically, the Plaintiff alleges that on or about April 28, 2012, an unnamed individual provided two medical prescriptions for drugs at the Edgewood Giant Eagle pharmacy location, one of which was for 60 caplets of 10 mg Hydrocodone-acetaminophen. [TAC at ¶ 168]. The Perpetrator presented the prescriptions – which named Plaintiff as the patient – "using Plaintiff's identity without Plaintiff's permission or authorization." [TAC at ¶ 168]. An unnamed pharmacist at the Edgewood Giant Eagle pharmacy, believing the prescription to be valid, filled the prescriptions and thereafter submitted an insurance claim using Plaintiff's identity and health insurance information. [TAC at ¶ 168, 177]. According to the Plaintiff, it is Giant Eagle's (as well as CVS's) standard practice to dispense controlled substances, including narcotics, to third parties without validating that the purported prescriptions are legitimate. [TAC at ¶ 172, 244].

On or about May 2, 2012, the Perpetrator presented a medical prescription – identifying Plaintiff as the patient – at the Shakespeare Street Giant Eagle pharmacy location using

3

Plaintiff's personal identifying information. The prescription was for 60 tablets of 15 mg Oxycodone. [TAC at ¶ 184]. An unnamed pharmacist at the Shakespeare Street pharmacy location filled the prescription and submitted an insurance claim using Plaintiff's identity and health insurance information. [TAC at ¶¶ 178-79, 183, 187].

On or about May 12, 2012, the Perpetrator again entered the Shakespeare Street Giant Eagle pharmacy and presented a medical prescription naming Plaintiff as the patient for 75 tablets of 15 mg Oxycodone. The Perpetrator used Plaintiff's identifying information to obtain the drug. An unnamed pharmacist filled the prescription and Giant Eagle submitted an insurance claim using Plaintiff's identity and health insurance information. [TAC at ¶¶ 184-86, 189].

Plaintiff contends that Giant Eagle should have discovered the fraud because "the amounts listed in the purported prescriptions and the timing thereof, both filled by Defendant Giant Eagle at the same pharmacy location, *i.e., 60 tablets of 15 mg Oxycodone and 75 tablets of 15 mg Oxycodone within 10 days,* clearly indicated that the purported prescriptions were not for a legitimate medical purpose or at least required further inquiry." [TAC at ¶ 187] (emphasis original).

Plaintiff alleges that Giant Eagle "submitted false insurance claims using Plaintiff's identity and health insurance information on the basis [sic] this purported prescription without Plaintiff's authorization." [TAC at ¶¶ 183, 189]

On or about May 14, 2012, Plaintiff first became aware of that the Perpetrator obtained his information when a Pittsburgh police detective contacted Plaintiff and alerted him that his identity had been stolen. [TAC at ¶¶ 67-68]. The detective contacted Plaintiff at his place of business and one of Plaintiff's co-workers was "made aware" of the police contact, thereby causing "great embarrassment" for the Plaintiff." [TAC at ¶¶ 69-70].

On June 3, 2012 a CVS pharmacy store located in Swissvale, Pennsylvania telephoned Plaintiff to inquire about re-filling a prescription. [TAC at ¶ 77]. Plaintiff did not recognize the prescription and, because of this, "inferred" that CVS had already filled a prescription by someone fraudulently using Plaintiff's identity. [TAC at ¶¶ 78-79]. After Plaintiff notified CVS of the fraudulent prescription issue, he was placed on hold, and then CVS acknowledged that it had already been contacted by the police, had records seized and apologized to Plaintiff. [TAC at ¶¶ 80-82]. "Plaintiff was shocked and outraged that Defendant CVS had, given the circumstances, attempted to sell him controlled substances." [TAC at ¶ 83]. There is no allegation that Defendant CVS submitted any false insurance claims.

Plaintiff alleges that at no time did Defendants attempt to verify the identity of the individual presenting the purported prescriptions to determine if the name on the prescription matched the name of the person presenting the prescription to the pharmacy, nor did Defendants attempt to verify if the individual presenting the prescription was authorized to collect the prescriptions prior to filling them. [TAC at ¶¶ 86, 87]. Plaintiff further alleges that Defendants failed to recognize that the prescriptions were not issued for a legitimate medical purpose due to the identity of the prescribing doctor and/or nature of the prescribing doctor's practice, or due to the combinations of medications allegedly prescribed. [TAC at ¶¶ 90, 91]. Plaintiff alleges that Defendants "profit by selling drugs in a streamlined fashion that consciously omits necessary safety precautions for preventing drug diversion and/or insurance fraud and exhibit a calculated indifference to schemes involving unauthorized uses of Plaintiff's identity and confidential medical information, including in some cases insurance benefit information." [TAC at ¶ 95].

Plaintiff asserts that he has been left to deal with the "fall out of Defendants' behavior with respect to filling fraudulent prescriptions, unauthorized use of confidential protected health

information, and/or submission of fraudulent insurance claims." [TAC at ¶ 104]. His alleged

resultant damages are "time lost and money lost dealing with this medical identity theft"

including "incorporation of incorrect information onto Plaintiff's electronic or other health

record(s)." [TAC at ¶¶ 105, 106]. Plaintiff further alleges that his "identity has been

unnecessarily included in the Commonwealth of Pennsylvania's prescription monitoring

program as a result of Defendants' actions and/or failures to act." [TAC at ¶ 107].

     In addition to his own individual claims, Plaintiff seeks to represent a class action,

consisting of:

> 1. "[a]ll individuals whose identity and/or protected health information was
> used by Defendants during the period beginning at least as early as April
> 28, 2012 to present where: (i) said individual's identity and/or protected
> health information was used by Defendants to fill a purported prescription
> for a federally controlled substance; and (ii) the controlled substance that
> was the subject of the purported prescription was known by Defendants to be
> commonly abused by drug addicts ('Class 1')"; and

> 2. "[a]ll individuals whose identity and/or protected health information was
> used **in an unauthorized way** by Defendants during the period beginning
> at least as early as April 28, 2012 to present where: (i) said individual's
> identity and/or protected health information was used by Defendants to fill
> a purported prescription for a federally controlled substance; and (ii) the
> controlled substance that was the subject of the purported prescription
> was known by Defendants to be commonly abused by drug addicts ('**Class 2**')"

[TAC at ¶ 135]. (emphasis added).

     Plaintiff frames the allegations of the TAC within the broader context of the nation's

prescription drug addiction problem. For example, Plaintiff alleges that the Pennsylvania State

Board of Pharmacy web site reports that "over 6 million Americans use prescription drugs such

as pain relievers, tranquilizers, and stimulants *non-medically*." [TAC at ¶ 11] (emphasis in

original). Plaintiff also alleges that the Center for Disease Control and Prevention web site

reports that drug overdose death rates in the United States have more than tripled since 1990 and that in 2008, more than 36,000 people died from drug overdoses, and most of these deaths were caused by prescription drugs. [TAC at ¶¶12, 13]. Plaintiff alleges that "[i]t is generally understood that pharmacists act as a "gatekeeper", uniquely positioned to stop fraud at the point of drug sale and distribution." [TAC at ¶ 19]. Plaintiff avers that the "U.S. Department of Justice, Drug Enforcement Administration (DEA) has instituted numerous investigations into fraudulent pharmacy activities in Florida, a state in which lax pharmacy practices attracted drug addicts from other states, such as Ohio." [TAC at ¶ 3, citing Exhibits A-H].

The Plaintiff alleges the following causes of action as to Defendant Giant Eagle: negligent security of personal information (Count I) [TAC at ¶¶ 148-227] ; negligent failure to act (Count II) [TAC at ¶¶ 293-341]; identity theft (Count III) [TAC at ¶¶ 386-391]; fraud (Count IV) [TAC at ¶¶ 396-409]; unjust enrichment (Count V) [TAC at ¶¶ 410-424]; unfair trade practices (Count VI) [TAC at ¶¶ 442-452]; invasion of privacy (Count VII) [TAC at ¶¶ 453-461]; and conversion (Count VIII) [TAC at ¶¶471-480].

The Plaintiff alleges the following causes of action against Defendant CVS: negligent security of personal information (Count I) [TAC at ¶¶ 228-292]; negligent failure to act (Count II) [TAC at ¶¶ 342-385]; identity theft (Count III) [TAC at ¶¶ 392-395]; unjust enrichment (Count V) [TAC at ¶¶ 425-441]; invasion of privacy (Count VII) [TAC at ¶¶462-470]; and conversion (Count VIII) [TAC at ¶¶481-485].

In his prayer for relief, Plaintiff seeks compensatory damages, statutory damages, an accounting of all profits gained by Defendants due to said unlawful activity, disgorgement of Defendants' profits as equity deems proper, restitution, punitive damages, pre-judgment interest, an injunction enjoining and precluding Defendants from dispensing drugs within the

Commonwealth of Pennsylvania, specifically controlled substances, without first taking steps deemed necessary by this Court to confirm the purported prescription is for a legitimate medical purpose and validly presented, and an injunction enjoining and precluding Defendants from using identity and protected health information of any individual without first taking steps deemed necessary by this court to ensure the use of such information is authorized under applicable standards, legal fees, and treble damages. [TAC at pp. 80-81].

### C. Standard of Review

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the Plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a Plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The Court emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In the subsequent case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions." *Id.* at

679-80. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The task of determining whether a complaint states a plausible claim for relief is "context-specific," and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (citing *Twombly*, 550 U.S. at 556–57); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (adopting *Iqbal*'s standards).[1]

We note Plaintiff has attached Exhibits to his Third Amended Complaint. [ECF No 1-9 at 85-297]. "Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Courts ruling on Rule 12(b) (6) motions may take judicial notice of public records." *Anspach ex rel. Anspach v. City of Phila.*, 503 F.3d 256, 273 n. 11 (3d

---

[1] The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70–73 (3d Cir. 2011); *Santiago v. Warminster Twp*., 629 F.3d 121, 129–30 (3d Cir. 2010); *Fowler* 578 F.3d at 209–211. The Court of Appeals recently summarized the three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citing *Iqbal* and *Argueta*)

Cir. 2007).  Thus, without commenting on their admissibility or relevancy, the documents[2] which are referenced in Plaintiff's Third Amended Complaint and are attached thereto, may be considered without converting the motion into a motion for summary judgment.

With this standard of review in mind, we now turn to the allegations of the Third Amended Complaint and whether the Plaintiff has stated a claim under the various causes of action alleged.

### D.  Discussion

**Whether the Plaintiff has stated a claim under negligent security of personal information and negligent failure to act**

Count I alleges that Defendants have a duty to safeguard his identity and personal health information and breached that duty by failing to take reasonable precautions to protect Plaintiff from injuries caused by a third party.  [TAC ¶¶ 151-153, 230-233].  Similarly, in Count II, Plaintiff alleges that Defendants are liable for negligent failure to act, insofar as they had a duty to take affirmative steps to reasonably safeguard Plaintiff's medical identity and failed to take reasonable precautions to protect Plaintiff from injuries caused by a third party.  [TAC ¶¶ 294-295, 343-344].

Count I alleges that "Defendant Giant Eagle has sacrificed the well-being of its existing patients and customers in favor of profits by dispensing drugs to individuals that do not have a

[2] Exhibit A: Prehearing Statement on Behalf of the Government before an ALJ in *the Matters of Walgreen Co*, USDOJ, DEA Docket Nos. 13-9, 13-10, 13-11; Exhibit B: Prehearing Statement on Behalf of the Government in *Matter of Walgreen* USDOJ, DEA No. 13-10; Exhibit C: Government's Prehearing Statement *In Matter of Walgreen* USDOJ, DEA Docket No. 13-11; Exhibit D: Supplemental Prehearing Statement on Behalf of the Government In the *Matters of Walgreen Co.*, USDOJ, DEA No. 13-1, 13-9, 13-10, and 13011, Exhibit E: Government's Prehearing Statement for Walgreens *In the Matter of Walgreens* USDOJ, DEA No. 13-1, 13-9, 13-10, 13-11, 13-16, 13-18, 13-20; Exhibit F: Government's Prehearing Statement for Walgreens *In the Matter of Walgreens* USDOJ, DEA No. 13-1, 13-9, 13-10, 13-11, 13-16, 13-18, 13-20; Government's Consolidated Supplemental Prehearing Statement *In the Matter of Walgreens* USDOJ, DEA No. 13-1, 13-9, 13-10, 13-11, 13-16, 13-18, 13-20; Exhibit H: ALJ's Recommended Decision,  DOJ, DEA *Holiday CVS* , Nos. 12-37 and 12-38, 77 Fed Reg. 198 (October 12, 2012); Exhibit I: National Target Drug Good Faith Dispensing Checklist and Policy; Exhibit J: Coventry Health America Prescription Report for Plaintiff, Statement of Patient Cost and Summary of Prescriptions for year 2012.

valid prescription and use Plaintiff's identity" and "by making unauthorized uses of Plaintiff's protected health information" and further, "by submitting fraudulent insurance claims using Plaintiff's protected health information and health insurance benefits." [TAC ¶¶ 155-157]. The allegations against CVS are nearly identical. [TAC at ¶¶ 235, 244] (without alleging insurance claims made). Plaintiff alleges that "[i]n so doing, Defendant Giant Eagle does not attempt to verify that purported prescriptions for drugs are for a legitimate medical purpose, e.g., by inquiring with the prescribing physician or verifying the identity of the individual attempting to fill the purported prescription." [TAC ¶ 158; see also TAC at ¶237 as to CVS].

To state a claim under negligence in Pennsylvania, Plaintiff must aver that the defendants 1) owed him a duty of care, 2) breached that duty, 3) the breach resulted in injury to Plaintiff, and 4) he suffered an actual loss or damage. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

### Duty

Defendants argue that they do not owe Plaintiff a professional duty to discover that the prescriptions submitted by the Perpetrator were fraudulent and to refuse to fill the fraudulent prescriptions because no laws, rules or regulations enacted by the relevant governing bodies require such a duty. The first element in an action sounding in negligence is "a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct." *Morena v. South Hills Health System*, 462 A.2d 680, 684 n.5 (Pa. 1983); *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002). Determining whether a duty exists is a question of law for the court, which must balance several discrete factors, including: 1) the relationship between the parties, 2) the social utility of the actor's conduct, 3) the nature of the risk imposed and foreseeability of the harm incurred, 4) the consequences of imposing a duty upon the actor, and 5) the overall public interest in the proposed solution. *Atcovitz*, 812 A.2d at

1223.   While no individual factor is dispositive, "a duty will be found to exist where the balance

of these factors weighs in favor of placing such a burden on a defendant." *Phillips v. Cricket*

*Lighters,* 841 A.2d 1000, 1008-09 (Pa. 2003).   Plaintiff may also show negligence by

demonstrating the violation of a statute or regulation that establishes a legal duty of care.

*Madison v. Bethanna, Inc.*, 2012 WL 1867459, *5 (E.D. Pa. 2012).

In *Atcovitz*, a patron suffered a heart attack while playing tennis at a sports club.   The

patron survived, but suffered permanent injuries to his nervous system.   In his subsequent

lawsuit, the patron alleged that the club was negligent in failing to maintain an automated

external defibrillator (AED) on the premises.   The court rejected that a duty existed based on the

overall public interest of the proposed solution (factor five of common law duty of care analysis)

because the subject matter (the maintenance of an AED) was already highly regulated under

Pennsylvania law.[3]   *Atcovitz,* 812 A.2d at 1223.   The Supreme Court of Pennsylvania

determined that clubs owed patrons no duty to maintain an AED, starting its duty analysis with

the proposition that where Pennsylvania lawmakers have thoroughly considered the statewide

application and implications of a subject, the courts must refrain from imposing additional

requirements upon that legislation.   *Id.*   It is this line of reasoning on which Defendants herein

rely.

Defendants argue that the practice of pharmacy is similarly regulated in Pennsylvania by

the Pennsylvania Pharmacy Act, 63 P.S. §§ 390-1 *et seq*. ("Pharmacy Act").   The Pharmacy Act

---

[3] The court identified two pieces of relevant legislation, the Emergency Medical Services Act, Pa. Stat. Ann. Titl. 35, §§ 6921-6938 ("EMS Act") and 42 Pa. Cons. Stat. § 8331.2 ("AED Good Samaritan Act").   The EMS Act is a comprehensive piece of legislation, the *Atcovitz* court explained, the stated intent of which is "to assure readily available and coordinated emergency medical services of the highest quality to the people of Pennsylvania."   To achieve this goal, the EMS Act and its implementing regulations explicitly classify and identify the capacities, training requirements, and qualifications of individuals who are authorized to deliver emergency medical service including the use of AEDs

governs the practice of pharmacy by its rules and regulations and its establishment of the State Board of Pharmacy, which is charged with regulating the practice of pharmacy, licensing pharmacists, investigating all violations of the Pharmacy Act, and prosecuting violations where appropriate. 63 P.S. §§ 390-6(1), (3), (5), and (8). Defendant CVS argues that it is notable that there are no rules or regulations that create a duty "even remotely consistent with any of Plaintiff's allegations, and certainly no rule or regulation that requires pharmacists to protect a pharmacy patient from criminal activity perpetrated by a third party." [ECF No. 31 at 7]. Giant Eagle has made an identical argument. [ECF No. 35 at 9]. Giant Eagle aptly notes that "[t]his is not surprising since pharmacists are trained in the practice of pharmacy, not law enforcement." [ECF No. 35 at 9].

The Pharmacy Act does, however, require pharmacists to use their professional skills in engaging in the "practice of pharmacy," which is defined as

> The provision of health care services by a pharmacists, which includes the interpretation, evaluation and implementation of medical orders for the provision of pharmacy services or prescription drug orders; the delivery, dispensing or distribution of prescription drugs; participation in drug and device selection; drug administration; drug regimen review; drug therapy management, . . .drug or drug-related research; compounding; proper and safe storage of drugs and devices; management of drug therapy pursuant to section 9.3, . . . maintaining proper records; patient counseling; and such acts, services, operations or transactions necessary or incident to the provision of these health care services. . . .

63 P.S. § 390-2(11).

Pennsylvania courts have specifically limited the duty a pharmacist owes its customers to filling prescriptions in a safe manner, and "have rejected arguments seeking to expand the duties imposed by law beyond this narrow scope," citing *Forish v. Paul*, 2 Pa. D. & C. 4th 413, 416-17 (Erie Cty., Feb 9, 1989) and *Makripodis v. Merrell-Down Pharms.*, 523 A.2d 374, 376-77. (Pa. Super. 1987) (refusing to impose implied warranty of merchantability upon pharmacists and

affirming dismissal of complaint against pharmacist based upon sale of defective prescription drug product). A CVS notes, *Forish* was decided prior to *Alcovitz*, but nevertheless anticipated its ruling when the *Forish* court recognized that pharmacies are highly regulated by the Commonwealth and that courts are "precluded from imposing duties in addition to those which the legislative branch has chosen to set forth." 2 Pa. D&C.4th at 417. The court reasoned that "[t]o hold a pharmacist accountable for monitoring use makes little practical sense – a patient could have prescriptions filled at a number of different pharmacies, rendering any attempt at comprehensive record-keeping virtually impossible absent some type of state-wide regulatory scheme." *Id.* We agree.

Indeed, the holding in *Forish* is particularly instructive; the court recognized that a pharmacist's duties to its customers fall into two broad categories in which they are specifically trained:

> First, liability may flow from a pharmacist's failure to remedy inadequacies *on the face* of a physician's prescriptions. These might include failure to correct improper dosage directions; failure to check on illegible prescriptions; and failure to notice a potentially lethal interaction between drugs on the face of a prescription. Under these circumstances, the courts have determined that a pharmacist has a duty to alert the physician and make proper adjustments. See generally *Riff v. Morgan Pharmacy*. The second category involves negligence on the part of a pharmacist in the actual process of preparing and dispensing a medication pursuant to the orders of the physician. Into this area fall misreading a prescription; mislabeling; improper compounding; incorrect dosage (in strength or quantity); use of improper methods for dispensing; failure to ensure that the drug is pure and unadulterated in form upon sale; and failure to attach the proper contraindication warnings as per the doctor's instructions. **These particular responsibilities involve that which a pharmacist is specifically trained to practice. As such, they must be carried out with the degree of skill and care expected of the pharmaceutical profession as a whole.**

*Forish v. Paul*, 2 Pa. D. & C. 4th at 416-17 (italics in original) (bold added). Giant Eagle argues that a pharmacist "has a duty **to its customers** to (1) correct any obvious errors in a written prescription that a pharmacist – because of his or her professional training — should recognize

14

as causing a **danger to the customer**, and (ii) to prepare and dispense the prescribed medication in accordance with the prescription." [ECF No. 35 at 11]. In the absence of legal precedent to support his claim, Plaintiff cannot expand the duty of Defendants' pharmacists to include them being responsible for a third party's criminal activities.

Defendants further correctly note that the State Board of Pharmacy, the Pennsylvania agency charged with regulating the practice of pharmacists and interpreting the Pharmacy Act, has declined to impose any duty on pharmacists to protect pharmacy patients from criminal identity theft perpetrated by a third party. The standards of conduct and duties owed by Pennsylvania pharmacists can be found in the Board's "Standards of Practice," 49 Pa. Code § 27.18, which is silent as to regulations requiring a pharmacist to protect its patients from identity theft. We agree with Defendants that Plaintiff cannot ask this Court to impose a duty that neither the legislature nor the State Board of Pharmacy have imposed.

The Standards of Practice regulations state:

> A pharmacist may decline to fill or refill a prescription if the pharmacist knows or has reason to know that it is false, fraudulent or unlawful, or that it is tendered by a patient served by a public or private third-party payor who will not reimburse the pharmacist for that prescription. A pharmacist may not knowingly fill or refill a prescription for a controlled substance or nonproprietary drug or device if the pharmacist knows or has reason to know it is for use by a person other than the one for whom the prescription was written, or will be otherwise diverted, abused or misused. In addition, a pharmacist may decline to fill or refill a prescription if, in the pharmacist's professional judgment exercised in the interest of the safety of the patient, the pharmacist believes the prescription should not be filled or refilled. The pharmacist shall explain the decision to the patient. If necessary the pharmacist shall attempt to discuss the decision with the prescriber.

49 Pa. Code § 27.18(c). These "gatekeeper" responsibilities – a different breed than those proposed by the Plaintiff -- are owed to the Commonwealth, not the customer, are regulated and enforced by the Board of Pharmacy and the enforcement agencies of the Commonwealth, rather

than by private individuals, and are designed and intended to combat the illegal distribution of controlled substances, not to stop identity theft.

Moreover, Defendants argue that because the alleged injury in the case at bar was suffered by one not within the scope of a duty, the Plaintiff cannot recover because there has been no breach of a duty with regard to him. *Merrit by Southeast Nat'l Bank v. City of Chester*, 496 A.2d 1220, 1221 (Pa. Super. 1985). This is a compelling argument. In other words, it was the Perpetrator's actions of stealing Plaintiff's identity that caused any alleged harm to Plaintiff, rather than Defendants' filling of the prescriptions.

### *Causation*

Even if the Plaintiff had alleged sufficient, plausible facts to support a claim that a duty was owed to him, Plaintiff's negligence allegations fail with respect to causation. Proximate cause is a question of law that must be established before the question of actual cause may be put to the jury. *Novak v. Jennette Dist. Mem. Hosp.*, 600 A.2d 616, 618 (Pa. Super. 1991). We find that Defendants' negligence, if any, was so remote that as a matter of law, they cannot be held legally responsible for harm which subsequently occurred. *Flickinger Estate v. Ritsky*, 305 A.2d 40, 43 (1973), *quoting* W. Prosser, Law of Torts § 49, at 282 (1964). See also Prosser and Keeton, The Law of Torts (5th Ed.) § 42, at 273 (1984). We note that the TAC alleges many conclusory allegations but few adequate factual allegations to support the notion that the Perpetrator stole Plaintiff's identity from either Defendant. [TAC ¶¶ 51, 51]. Moreover, as previously discussed, Defendants are generally not held liable for wrongful acts of intervening third parties. It is well settled that a tortfeasor may be relieved of his responsibility for his negligent conduct from an intervening act of a third party, if that intervening act constitutes a "superseding cause." *Frey v. Smith*, 685 A.2d 169, 173 (Pa. Super. 1996). A "superseding cause"

is an act of a third person or other force which, by its intervention, prevents the negligent party from being liable for harm to another caused by his or her antecedent negligent conduct. *See Krasevic v. Goodwill Industries, Inc.,* 764 A.2d 561, 569 (Pa. Super. 2000) (citations omitted). In *Ford v. Jeffries*, 379 A.2d 111 (Pa. 1977), the Pennsylvania Supreme Court held that the act of a third person in committing an intentional tort or crime is a superseding cause. *Jeffries,* 379 A.2d at 115.

In the end, based upon Plaintiff's own allegations, we find that the Counts alleging negligence should be dismissed because the Perpetrator's identity theft that caused the alleged harm.

### *Harm*

Additionally, Defendants argue that Plaintiff fails to state a claim sounding in negligence because he has not alleged any compensable injury or harm.   We note that Plaintiff seeks damages for his alleged "embarrassment when his co-worker was made aware of the fact that Plaintiff had been contacted by police, and that he has "time lost and money lost dealing with this medical identity theft."  [TAC at ¶¶ 70, 105].  In terms of alleged actual loss or damages, Plaintiff alleges that he and others in his class "suffer lost time in dealing with the fall out of identity theft, including time lost contacting health care providers, time lost contacting health insurance providers, time lost coordinating with ongoing law enforcement investigations, money lost due to fraudulent insurance claims made and/or other claims made using the Plaintiff's identity, as well as suffering emotional distress attendant to such victimization."  [TAC ¶ 161]; see also TAC at ¶288-91].

Under Pennsylvania law, mere embarrassment is not compensable in a negligence action, absent physical injury, citing *Rolla v. Westmoreland Health System*, 651 A.2d 160, 163 (Pa.

Super. 1994). There is no such allegation here. Even so, Defendants argue that there is no causal connection between their actions, and the alleged harm; Plaintiff merely alleges that the embarrassment was caused by the fact that his co-worker was "made aware" [TAC at ¶ 70] of the police contact. Furthermore, Defendants argue that "time lost" is not compensable for three reasons: 1) it arose from Plaintiff's voluntary decision to communicate with police investigators and with his health insurance provider; 2) "time lost" was not caused by Giant Eagle's alleged negligence; and 3) "time lost" is not compensable under the law without a corresponding loss of earnings, citing 1 Summ. Pa. Jur. 2d Torts § 9:45 (2d ed.). Defendants contend that Plaintiff has failed to allege how their failure to recognize the fraudulent prescriptions caused him any physical harm or pecuniary loss; there is no claim that he paid for the fraudulent drug prescription or that his insurance premiums increased as a result of any alleged submission of insurance claims for the fraudulent prescriptions.

We agree. Plaintiff's negligence claims fail as a matter of law because he has not alleged any facts in support of his entitlement to damages for compensable injury as a result of Defendants' alleged negligence.

In conclusion, for all the above reasons, we recommend that Counts I and II be dismissed for failure to state a claim.

**Whether Plaintiff has stated a claim for identity theft**

Defendants also move to dismiss Count III which alleges identity theft, 42 Pa. C.S.A. § 8315. Plaintiff alleges that the Defendants stole his identity by using identifying information to further the "unlawful" sale of prescription drugs and as to Defendant Giant Eagle, insurance fraud. [TAC ¶¶ 387, 389, 393]. Defendants argue that they did not steal Plaintiff's identity, the Perpetrator did, and he or she did so before ever entering their pharmacies.

18

In Pennsylvania, the crime of identity theft occurs when one "possesses or uses, through any means, identifying information[4] of another person without the consent of that other person to further any unlawful purpose." 18 Pa. C.S.A. § 4120 (a). The Pennsylvania statute which establishes the right to bring a civil action based on identity theft arises under 42 Pa. C.S.A. § 8315. Defendants argue that there is no allegation that they *unlawfully* possessed Plaintiff's identifying information, citing *Jones v. Manpower, Inc.*, 2014 WL 3908190 (M.D. Pa., Aug. 11, 2014) and *Eagle v. Morgan,* 2013 WL 943350, *9 (E.D. Pa. March 12, 2013). In *Jones*, the court held that Plaintiff had failed to state a claim of identity theft and granted defendant's motion to dismiss, "since Plaintiff[] stated that he previously worked for Defendant Manpower and Manpower lawfully possessed all of his identifying information, we found that Manpower did not steal Plaintiff's information." 2014 WL 3908190 at *8. We note that Plaintiff was similarly situated; he only makes the conclusory allegation that defendant "possessed or used identifying information" [TAC ¶ 387, 393] rather than unlawfully possessed or stole it. As defendants suggest, Plaintiff's claim should be directed at the Perpetrator. We fail to see how the Defendants attempted to pass themselves off as being Plaintiff. Absent a showing that Defendants stole his information and used it for an unlawful purpose,[5] there is no merit to a state law claim of identity theft. *Eagle*, 2013 WL 943350, *9.

---

[4] "Identifying information" is defined as "[a]ny document, photographic, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name, birth date, Social Security number, driver's license number, nondriver governmental identification number, telephone number, checking account number, savings account number, student identification number, employee or payroll number or electronic signature." Id. at § 4120(f).

[5] Nor has Plaintiff alleged or shown legal authority to support his theory that Giant Eagle's submission of insurance claims was unlawful where, as Plaintiff admits, it was believed at the time that the patient presenting the prescription was indeed the Plaintiff.

Plaintiff further alleges that defendants possessed his identifying information without his consent "while deliberately ignoring a questionable prescription when there was reason to believe it was not issued for a legitimate medical purpose." [TAC ¶ 390, 394]. Plaintiff has not cited to any legal authority to support the proposition that Defendant's alleged failure to discover that the Perpetrator had stolen his identity makes them equally liable for the identity theft. His reliance on *Clinton Plumbing and Heating of Trenton, Inc., v. Ciaccio*, 2011 WL 6088611 (E.D. Pa. Dec. 7, 2011) is misplaced: the court entered judgment in favor of Plaintiffs against defendant comptroller who himself was the fraudulent actor or Perpetrator and had used Plaintiff's personal financial information to steal funds from Plaintiff's bank accounts. The *Ciaccio* court did not find liability under a theory as Plaintiff herein has proposed, i.e. there was no finding of identity theft on the part of the banks which transferred the money to the defendant's account because the banks failed to recognize that the transfer requests were fraudulent.

After a careful review of the TAC, we find the Defendants' arguments to be compelling, and we recommend that the Court dismiss Count III for failure to state a claim. Plaintiff has not alleged sufficient factual support to support a claim that the defendants used his personal health information or identity to further an unlawful purpose.

**Whether Plaintiff has standing, and if so, has stated a claim under insurance fraud**

Count IV alleges that the Defendant Giant Eagle committed insurance fraud. Giant Eagle argues that Plaintiff lacks standing pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, that he has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff fails to directly address Defendant Giant Eagle's legal argument that he lacks standing. Rather Plaintiff explains his allegations, arguing that Giant Eagle made direct misrepresentations when it submitted "fraudulent charges, with complete disregard as to their validity, to Plaintiff's account. . . . [H]e and the insurance carriers justifiably relied on the misrepresentation and suffered damage thereby, i.e. Defendant actually collected Plaintiff's insurance benefits . . . [which] builds extra costs into the health insurance system. These costs are passed onto Plaintiff in the form of higher premium payments and reduced benefit availability." [ECF Doc. 37 at 14].

A motion to dismiss under Rule 12(b)(1) challenges whether the court has the jurisdiction to hear the Plaintiff's claim; a 12(b)(6) motion questions whether the Plaintiff has stated a cognizable legal claim. When presented with a motion pursuant to both rules, the court must consider the arguments under Rule 12(b)(1) first because "[w]hether the complaint states a cause of action on which relief could be granted is a question of law ... [that] must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946). "Under [Rule] 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.*" In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir. 2012). A federal court lacks subject matter jurisdiction over a claim if the Plaintiff does not have standing to bring that claim. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a Plaintiff's claims, and they must be dismissed").

The constitutionally mandated minimum requirement of standing includes the following elements: 1) Plaintiff must have suffered an "injury in fact", defined as an invasion of a legally

protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) a causal connection between the injury and the conduct complained of; and 3) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The burden rests with the Plaintiff to allege facts that "he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

Assuming *arguendo* that the submission of insurance claims by Giant Eagle was fraudulent, Giant Eagle contends that any such cause of action would belong to the insurance carrier, not to Plaintiff, citing *Lal v. Ameriquest Mortg. Co*., 858 A.2d 119, 122-23 (Pa. Super. 2004). Standing requires that a party have "a direct, immediate and substantial interest in the outcome of the litigation." *Id*. In the absence of personal loss, a Plaintiff "has no viable interest in the outcome of [the] case." *Id*. at 123. Here, any alleged damages suffered by Plaintiff are conjectural, hypothetical, and lack particularity. We find that plaintiff lacks standing.

In order to state a claim for fraud, Plaintiff must prove that he was the recipient of a fraudulent statement, that he justifiably relied on the fraudulent statement, and that he suffered "actual loss" as a result. *Delahanty v. First Pennsylvania Bank, N.A*. 464 A.2d 1243, 1252, 1257 (Pa. Super.1983). He has not done so. Plaintiff lacks standing to bring an insurance fraud claim because he has not alleged that he ever received, saw, relied upon or took action in response to the purportedly "fraudulent" insurance claims, or that he incurred any damages as a result of the alleged fraudulent claims.

After a careful review of the allegations in the TAC, we agree with Defendant Giant Eagle that the plaintiff lacks standing, and therefore recommend that Count IV be dismissed in its entirety.

**Whether Plaintiff has stated a claim under unjust enrichment**

Defendants argue that Count V should be dismissed because Plaintiff has no standing[6] to assert a claim for unjust enrichment, or, in the alternative, has failed to state a viable claim for unjust enrichment. Plaintiff alleges that CVS was unjustly enriched by allegedly "accepting payments" for fraudulent sales by the "unauthorized use and misappropriation of Plaintiff's identity and protected health information." [TAC ¶¶ 426-28; *see also* allegation as to Giant Eagle, ¶ 412]. Secondly, Plaintiff alleges in broad strokes that CVS was unjustly enriched by retaining "the financial benefits it received using lessened privacy rules in the Commonwealth of Pennsylvania." [TAC ¶ 439, 422].

The United States Court of Appeals has observed:

> The elements of unjust enrichment under Pennsylvania law have been defined as follows: (1) benefits conferred on defendant ***by Plaintiff;*** (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 180 (3d Cir. 2008) (*citing Limbach Co. LLC v. City of Phila.*, 905 A.2d 567, 575 (Pa. Commw. 2006)) (emphasis added). Thus, courts have emphasized that Plaintiff's actions are core to the cause of action. "[T]he doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the Plaintiff." *Northeast Fence*, 933 A.2d at 668-669 (emphasis added). Moreover, "[w]hether the doctrine applies depends on the unique factual circumstances of each case. In determining if the

---

[6] Defendant CVS, citing to *Lujan*, argues that there is no allegation of injury in fact as a result of CVS's alleged conduct, apparently invoking Fed. R. Civ. P. 12(b)(1) without outright sighting to that rule. CVS points out that Plaintiff has not alleged facts supporting that he was financially harmed, or that his insurance premium was raised. Defendant Giant Eagle similarly questions whether Plaintiff has standing. [ECF No. 35 at 19]. We find defendants' arguments as to standing compelling for the reasons previously stated, Plaintiff's allegations as to harm being vague and conclusory, but out of an abundance of caution, we focus attention on the standard in Fed. R. Civ. P. 12(b)(6).

doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993). Indeed, the "unjust" element of an unjust enrichment claim is the "most significant" one under Pennsylvania law. *Id.*; *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 668-69 (Pa. Super. 2007).

In this case any benefits allegedly conferred on Defendants were payments allegedly made by a health insurer (or by the Perpetrator), not by the Plaintiff, for the fraudulent prescriptions; this does not state a claim under Pennsylvania jurisprudence. Plaintiff has not alleged factual support for the notion that he himself conferred any benefits on Defendants. In addition, Plaintiff has failed to allege specific facts to support the notion that the retention of such benefits by the Defendants would be unjust under the circumstances. Plaintiff's cause of action should be dismissed.

Parenthetically, to the extent that Plaintiff argues benefits were conferred on Defendants in the form of payments made by a health insurer, even if a party, said insurer could not bring a claim for unjust enrichment because it had a contractual relationship with Giant Eagle. A claim for unjust enrichment, wherein the law implies a quasi-contract which requires the defendant to pay to Plaintiff the value of the benefit conferred, does not exist where there is a written contract between the parties. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

After a careful review of the allegations in the TAC, we conclude that the Defendants' motion to dismiss Count V should be granted on the grounds that Plaintiff has failed to state a claim.

**Whether Plaintiff has stated a claim under Unfair Trade Practices and Consumer Protection as to Defendant Giant Eagle[7]**

In Count VI, Plaintiff alleges that Giant Eagle's submission of allegedly fraudulent insurance claims to a health insurer violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 *et seq.* (the "UTPCPL"). This statute is intended to protect the public from fraud and unfair or deceptive business practices. *Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 409 (Pa. Super. 2012). The UTPCPL gives a private right of action to Plaintiffs who "suffer[] any ascertainable loss of money or property . . . as a result of the use or employment of a [deceptive practice]." 73 Pa. Stat. § 201-9.2. The United States Court of Appeals for the Third Circuit has held that this provision of the UTPCPL requires an individual to plead facts showing that the Plaintiff (a) justifiably relied on the defendant's wrongful conduct or representation and (b) suffered harm as a result of that reliance. *Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 221-23 (3d Cir. 2008).

In *Fazio,* the court held that only an individual "who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, can bring an action under the UTPCPL. 62 A.3d at 409; *see* 73 P.S. § 201-9.2 . We find that Plaintiff's nearly verbatim allegation that he "has purchased during a relevant time period to this Action at least one insurance prescription drug benefit primarily for personal, family or household purposes" [TAC ¶ 448] is a legal conclusion the Court need not accept. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564 (2007); 73 P.S. 2§ 201-9.2(a).

---

[7] Defendant CVS is not named in Count VI.

Nor are there sufficient plausible facts in the TAC which suggest the nature of Plaintiff's loss, or to support the notion that Plaintiff's alleged purchase of a good or service is any way related to the alleged "deceptive" practices. Plaintiff alleges that Giant Eagle submits insurance claims to insurance carriers for benefit payments relating to prescription drug sales that it knew or should have known were fraudulent, and by doing so, causes a likelihood of confusion and "knowingly misrepresents that services are needed when they are not needed." [TAC ¶¶ 443-46]. There is no plausible factual allegation that Plaintiff knew of or relied upon any wrongful conduct or representation.

The case law is instructive. In *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001), wherein gasoline consumers brought a class action against an oil company which allegedly engaged in a deceptive advertisement campaign concerning benefits of using higher octane gasoline, the court held that a Plaintiff in a UTPCPL claim must suffer an ascertainable loss as a result of the defendant's prohibited action. "That means, in this case, a Plaintiff must allege reliance, that he purchased Ultra [gasoline] because he heard and believed Sunoco's false advertising that Ultra would enhance engine performance." *Id.* Here, Plaintiff contends only that Giant Eagle, through the submission of fraudulent insurance claims to the insurance carriers, has made misrepresentations to the insurance carriers and has caused confusion on the part of the insurance carriers. [TAC at ¶¶ 443-46]. He does not claim that he himself ever heard, saw, or relied upon said "fraudulent insurance claims."[8] He argues that his "standing is established at

---

[8] Defendant Giant Eagle, in their Brief in Support of the Motion to Dismiss, notes that Plaintiff has not alleged any causal connection between his purchase of a "prescription drug" and Giant Eagle's alleged deceptive practices. Giant Eagle notes that he does not claim he paid more for the "prescription drug" than he should have, that it was not what Giant Eagle told him that it was, or that Giant Eagle engaged in any false advertising or other deceptive practice with respect to the sale of the prescription drug. [ECF No. 35 at 22]. We find that Giant Eagle has erred in its reading of the TAC; Plaintiff alleges the purchase of "one insurance prescription drug **benefit**" i.e. an insurance policy at an inflated price, not a prescription drug itself. [TAC at ¶¶ 448, 451]. Giant Eagle appears to have cleared

26

least because of payments towards the insurance benefit and because Plaintiff's personal account was directly charged by the defendant." [ECF No. 37 at 13]. However, under Pennsylvania Unfair Trade Practices and Consumer Protection Law, a purchase sufficient to authorize private action must be made in reliance on deceptive practices alleged. *DiTeodoro v. J.G. Durand Intern.,* 566 F.Supp. 273, 275 (E.D. Pa.1983). We fail to see how Plaintiff relied on any deception.

Plaintiff argues that he is a direct purchaser of the insurance prescription drug benefit that was fraudulently charged by Giant Eagle, and that he has standing under the UTPCPL, relying on the holding in *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmith Kline, PLC,* 737 F.Supp.2d 380, 421 (E.D. Pa. 2010). We note that he has not alleged that he purchased an insurance policy from Giant Eagle, and this is not a claim that an insurer made fraudulent misrepresentations. *Pekular v. Eich*, 513 A.2d 427 (Pa. Super. 1986). Moreover, in *Sheet Metal Workers*, the court held that the Plaintiffs – welfare benefit plans -- had adequately stated claims under the statute, but those Plaintiffs were indirect purchasers of an antidepressant drug plan who were suing the drug manufacturer for filing sham patent infringement lawsuits in an attempt to retain their monopoly on a market. Those allegations are a far cry from the allegations herein.

Moreover, we note that despite Plaintiff's stated concern with the problem of prescription drug addiction and overuse of oxycodone, his private right of action is misplaced in this context. In *Hunt v. U.S. Tobacco Co.*, the court held that the UTPCPL's standing provision exists "to separate private Plaintiffs (who may sue for harm they actually suffered as a result of the

---

up its confusion when crafting their reply. [ECF No. 40 at p. 3]. Even so, the TAC fails to show how Giant Eagle has deceived Plaintiff himself.

defendant's deception) from the Attorney General (who may sue to protect the public from conduct that is likely to mislead)."  538 F.3d at  225.

Finally, Plaintiff has not only failed to adequately pled justifiable reliance, he has not shown that he is entitled to a presumption of reliance under the "narrow' exception of a fiduciary relationship between himself and Defendant.  *Hunt*, 538 F.3d at 227 n. 17.  Plaintiff argues that Defendant Giant Eagle is a healthcare provider and thus "is in a position of trust with respect to Plaintiff.  In such a relationship, reliance need not be alleged."  [ECF No. 37 at 12]. The burden of proof for establishing a fiduciary relationship is on the party asserting it.  *Kees v. Green*, 365 Pa. 368, 75 A.2d 602, 603 (1950).   Although Defendants may have received confidential information when he filled prescriptions at their retail pharmacies, this does not create a fiduciary relationship.  *Washington Steel Corp. v. TW Corp.,* 602 F.2d 594, 599 (3d Cir. 1979), *overruled on other grounds*, *Clark v. K-Mart Corp.,* 979 F.2d 965 (3d Cir.1992).  We find that Plaintiff has not pled facts giving rise to a fiduciary relationship between himself and Giant Eagle.

For  these reasons we recommend that Count VI be dismissed for failure to state a claim.

**Whether Plaintiff has stated a claim under invasion of privacy**

In Count VII, Plaintiff alleges that the Defendants invaded his privacy under two theories, namely by  1) "intentionally intruded upon the solitude or seclusion of Plaintiff by accessing and using Plaintiff's identity and protected health information without Plaintiff's permission or authorization"  and  2) "intentionally appropriated to its own use or benefit Plaintiff's name."  [TAC ¶¶ 454-455,  463-64.]  Under Pennsylvania law, invasion of privacy involves four separate torts:  (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for commercial purposes; (3) publicity given to

another's private life; and 4) publicity that unreasonably places another in a false light before the public. *Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. 2009).

Although the Pennsylvania Supreme Court has not expressly adopted the Restatement (Second) of Torts definition of intrusion upon seclusion, Pennsylvania courts rely upon its definition to parse such claims. *See Tagouma v. Investigative Consultant Svcs., Inc.,* 4 A.3d 170, 174 (Pa. Super. 2010). To establish a claim for intrusion upon seclusion in Pennsylvania, Plaintiff must prove that defendants invaded his privacy: "(1) by physical intrusion into a place where the Plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the Plaintiff's private affairs, or (3) some other form of investigation or examination into Plaintiff's private concerns." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984) (quoting Restatement (Second) of Torts, § 652B, comment b). The defendant is subject to liability under this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the Plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B cmt.c. "[T]he intrusion, as well as the action, must be intentional." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir.1989). "[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Id.*

We find that Plaintiff has failed to allege facts supporting this claim. Again, the actor who may be subject to such a claim was the Perpetrator. There is no allegation of physical invasion or that defendants oversaw or overheard Plaintiff's private affairs. Nor does Plaintiff allege that defendants conducted an investigation or examination into Plaintiff's private concerns, and in fact, he alleges they failed to conduct such an investigation when they had an alleged duty to do so. Indeed, where private information alleged to have been intruded upon was

legitimately obtained, there is no cause of action. *Burger v. Blair Medical Associates, Inc.,* 964 A.2d 374, 378 (Pa. 2009). Plaintiff does not allege that the pharmacies – of which he was a patient – improperly obtained his medical and personal identifying information. Such information appears to have been voluntarily provided by Plaintiff. Moreover, Plaintiff's allegation that his privacy was invaded when he received a phone call from a police officer is not sufficient to state a claim, nor has he cited legal precedent to support that theory.

Plaintiff must allege that the conducted amounted to an "intentional intrusion upon the seclusion of his private affairs which was ***substantial and highly offensive to a reasonable person.***" *Muhammad v. United States,* 884 F.Supp.2d 306, 317 (E.D. Pa. 2012), (citing *Pro Golf. Mfg. Inc. v. Tribune Review Newspaper Co.,* 809 A.2d 243, 247 (Pa. 2002) (emphasis added). Here, Plaintiff alleges that Defendants' "using Plaintiff's identity to distribute Schedule II narcotics to an unauthorized individual and/or using Plaintiff's identity to submit fraudulent insurance claims is 'highly offensive to a reasonable person.'" [TAC at ¶¶ 454, 463]. Again, this is a legal conclusion the Court need not accept. *See Twombly*, 550 U.S. at 564. Moreover, it is difficult to see how a reasonable person would find this alleged intrusion to be highly offensive.

As to the allegation that the defendants appropriated to their own use or benefit Plaintiff's name, the defendants' motion to dismiss will be granted as well. To adequately such a claim Plaintiff must allege that defendant "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the Plaintiff's name or likeness. . . . Until the value of the name has in some way been appropriated, there is no tort." *AFL Philadelphia LLC v. Krause*, 639 F.Supp.2d 512, 530 (E.D. Pa. 2009). Plaintiff's allegation fails because the Perpetrator committed the misappropriation of Plaintiff's name, not the defendants herein. Furthermore, it is clear that there are no facts supporting the contention that

Plaintiff's name had any particular value, or that it was appropriated by the Defendants. [TAC at ¶455, 464].

For these reasons, we recommend that Plaintiff's invasion of privacy claims at Count VII be dismissed in their entirety as to both Defendants.

**Whether Plaintiff has stated a claim for conversion**

In Count VIII, Plaintiff alleges conversion as to both defendants. As to Giant Eagle, he asserts that by submitting allegedly fraudulent insurance claims to the insurance carrier, Giant Eagle deprived him of "use, control and possession of Plaintiff's money and property." [TAC ¶ 474]. As to Defendant CVS, Plaintiff alleges that in fraudulently selling prescription drugs, it "exercised unauthorized control over Plaintiff's money and property, i.e. Plaintiff's identity and protected health information." [TAC ¶¶ 482-83].

Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Leonard A. Feinbere, Inc. v. Cent. Asia Capital Corp., Ltd.*, 974 F.Supp. 822, 844–45 (E.D. Pa.1997) (citation omitted). Under Pennsylvania law, the required elements of a conversion claim are: (1) the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, (2) without the owner's consent, and (3) without lawful justification. *Vavro v. Albers*, 2006 WL 2547350, at *13–14 (W.D. Pa. Aug. 31, 2006) (citing *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa. Super. 2000)). "As to the type of property that may be the subject of conversion, it is clear in Pennsylvania that a cause of action for conversion may be maintained for almost all kinds of personal property, including money, notes, bonds, certificates of stock, title deeds." *Id.* at *14.

31

While courts in other states have expanded the tort of conversion to apply to intangible property, in Pennsylvania this expansion is limited "to the kind of intangible rights that are customarily merged in, or identified with, a particular document (for example, a deed or a stock certificate)." *Apparel Bus. Sys., LLC v. Tom James Co.,* Civ. A. No. 06–1092, 2008 WL 858754, at *18 (E.D. Pa. Mar. 28, 2008) (citing *Famology.com Inc. v. Perot Sys. Corp*., 158 F.Supp.2d 589, 591 (E.D. Pa. 2001); and *Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620, 625 (Pa. Super.1983)). As to Plaintiff's allegation Defendants are liable for conversion in that his identity and protected health information was compromised, in *Vavro*, this court held that a "property interest in medical information is an intangible right that is not customarily merged or identified with some document, and therefore, cannot be the subject of a conversion claim in Pennsylvania." 2006 WL 2547350, at *13–14.

Plaintiff makes a conclusory allegation that he has been deprived of the use and possession of his money and property, but has alleged no factual basis to support this legal conclusion. Plaintiff does not allege specific facts to support the allegation of conversion, i.e. that he paid any money for the fraudulent prescriptions, that his insurance premiums went up, or that any submission of insurance claims has caused him to lose any money or property.

For all of these reasons, it is therefore recommended that Count VIII be dismissed as to both defendants.

**Leave to Amend**

Furthermore, we must conclude under the circumstances that any amendment of the TAC would be futile. As currently amended, the factual allegations of the TAC, fail to state a claim, and Plaintiff has not proposed an alternative pleading or even an alternative theory that would state a

plausible claim for relief. Granting leave to amend would be futile. *See Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).

III. **CONCLUSION**

For the reasons set forth above, it is recommended that the Motion to Dismiss filed on behalf of Defendant CVS Pharmacy, Inc. ("CVS") [ECF No. 30] be granted, the Motion to Dismiss filed on behalf of Defendant Giant Eagle, Inc. ("Giant Eagle") [ECF No. 34] be granted, and the Third Amended Complaint be dismissed in its entirety with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, any Objections to this Report and Recommendation are to be filed no later than July 23, 2015. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party may file Responses on or before August 6, 2015.

Date: July 9, 2015

Respectfully Submitted,

/s/ *Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Cc:     Counsel of record via CM-ECF